ORIGINAL

FILED

MAR 1 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE FEDERAL DISTRICT COURT OF THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| **AHMED ALI, MD**<br>12307 Pleasant Prospect Rd.<br>Mitchellville, MD 20721 | )<br>)<br>)<br>) |
| **Plaintiff** | )<br>) |
| -vs- | )<br>) |
| **ENVISION HOSPITAL CORPORATION**<br>**d.b.a. GREATER SOUTHEAST HOSPITAL**<br>OF WASHINGTON<br>1310 Southern Avenue SE<br>Washington, DC 20032-4623 | )<br>)<br>) |
| **DISTRICT of COLUMBIA DEPARTMENT**<br>**of HEALTH, HEALTH REGULATION**<br>**AND LICENSING ADMINISTRATION**<br>717 14th Street NW, Suite 600<br>Washington, DC 20005 | )<br>)<br>)<br>)<br>) |
| **SCOTT C. BURR, M.D.**<br>1310 Southern Avenue SE<br>Washington, DC 20032 | )<br>)<br>)<br>) |
| **WILTON O. NEDD, M.D.**<br>106 Irving Street NW<br>Washington, DC 20010 | )<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

Case: 1:08-cv-00431
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 3/12/2008
Description: Civil Rights-Non-Employ.

JURY ACTION

## COMPLAINT AND DEMAND FOR TRIAL BY FOR JURY

**COMES NOW** Plaintiff, Ahmed Ali, M.D., by and through undersigned counsel

bringing this action against the Defendants, Envision Hospital Corporation, d.b.a. Greater

Southeast Hospital of Washington, District of Columbia Department of Health, Health

Regulation and Licensing Administration, Wilton Nedd, M.D., Scott Burr, M.D., and pleads as

follows:

## I.  NATURE OF THE ACTION

Plaintiff, Ahmed Ali, M.D., brings this action in order to recover damages for (i) violation of 42 U.S.C. § 1983, (ii) negligence, (iii) breach of contract, (iv) promissory estoppel, (v) tortuous interference with contract and current or prospective business advantage, (vi) fraud, (vii) negligent misrepresentation, (viii)  intentional infliction of emotional distress, (ix) violation of the District of Columbia Unfair Trade Practices Act and (x) declarative relief, plus pre-judgment interest, costs and attorneys' fees for damages, as well as punitive damages, incurred as a proximate result of the Defendants' cumulative actions.

## II.  PARTIES

1.      Dr. Ahmed Ali, ("Dr. Ali"),  is a medical doctor, vascular and transplant surgeon and resident of the State of Maryland, who at all times relevant herein (other than those so-stated) was duly licensed to practice medicine and surgery in the State of Maryland (since 1980) and the District of Columbia ("District") (since 1979).  He has been Board-certified by the American Board of Surgery since 1987.

2.      Greater Southeast is a 450-bed general hospital at all times relevant herein owned and operated by Envision Hospital Corporation ("Envision") of Scottsdale, Arizona, a Delaware corporation doing business in the District, under the laws of the District and the United States of America.  It is accredited by the Joint Commission for the Accreditation of Healthcare Organizations ("JCAHO") and is a member of the American Hospital Association ("AHA").  Its physical address is 1310 Southern Avenue SE, Washington, DC 20032-4623 and its Registered Agent for service of

2

process is CT Corporation System at 1015 15th Street NW, Suite 1000, Washington, DC 20005.

3.      The District of Columbia Department of Health, Health Regulation and Licensing Administration (f/k/a the Health Professional Licensing Administration ("HPLA") is a division of the District of Columbia Department of Health providing services, administration and regulatory oversight through *inter alia* health professional licensing, pharmaceutical control, health regulation, animal disease and food prevention and rodent control.  Its physical address for service of process is 717 14th Street NW, Suite 600, Washington, DC 20005.

4.      Dr. Wilton Nedd is a medical doctor, cardiothoracic surgeon and by information and belief, a resident of the District of Columbia, who at all times relevant herein, was duly licensed to practice medicine and surgery in the District of Columbia and a chief competitor of Dr Ali, particularly in the subspecialty of vascular and endovascular surgery.  His office address is listed above.

5.      Dr. Scott Burr is a medical doctor, anesthesiologist and by information and belief, a resident of the District of Columbia, who at all times relevant herein was duly licensed to practice medicine and surgery in the District of Columbia and at all times relevant herein was Chief of Anesthesiology at Greater Southeast.  His office address is listed above.

### III.    JURISDICTION & VENUE

6.      This suit is brought and jurisdiction lies pursuant to 28 U.S.C. §§ 1331, 1332 and 1343 and the 14th Amendment to the United States Constitution.  This action seeks damages pursuant to 42 U.S.C. § 1983 and under common law claims subject to this

court's supplemental jurisdiction under 28 U.S.C. § 1367.  The amount in controversy exceeds $75,000.00.

7.     This Court has personal jurisdiction over the Defendants whose primary place of business is the District of Columbia.

8.     Venue is proper in this Court because of the location of this Court in relation to where the events in question arose.

9.     The District of Columbia is treated as a municipality for purposes of litigation under 42 U.S.C. § 1983 and may be sued under said statute.  *Best v. District of Columbia*, 743 F.Supp. 44 (D.D.C., 1990).

## IV.   OPERATIVE FACTS

10.    Dr. Ali is a vascular and transplant surgeon having received his medical degree and completed his internship at the University of Cairo, later completing a surgical residency and fellowship in transplant surgery at the Washington Hospital Center and finally receiving postgraduate training in endovascular surgery at the Arizona Heart Institute.

11.    In 2002, Dr. Ali was encouraged by Mr. Singh Taneja and Dr. Maurice McCreary (then Chief of Surgery at Greater Southeast) to open a vascular access center there where he would perform various surgical procedures, including but not limited to graft insertions, vascular access, angioplasty, atherectomy (plaque removal) and thrombectomy (clot removal).  At that time Greater Southeast was being reviewed by JCAHO for suboptimal performance (inconsistent with JCAHO standards) in regard to vascular access surgery.  Dr. Ali, based upon his education and experience, was told he could be of assistance to Greater Southeast and its patients in remedying any

4

shortfalls in his area of expertise and was admitted to its medical staff in November 2002.

12. Prior to accepting the vascular access center opportunity at Greater Southeast, Dr. Ali primarily practiced at the George Washington University Hospital ("GWU"). There, his patients were primarily affluent while his Greater Southeast patient population was primarily economically disadvantaged. Nonetheless, Dr. Ali built a noteworthy and profitable practice at Greater Southeast while providing needed care to many underprivileged persons seeking care there.

13. By information and belief, Dr. Nedd communicated his dissatisfaction with Dr. Ali's endovascular surgical management as it related to four prior patients (all actually prior patients of Dr. Nedd who had subsequently sought vascular care from Dr. Ali, leaving Dr. Nedd's practice) to members of Greater Southeast's medical staff, subsequently providing a highly critical formal written peer review ("internal review") of said cases and communicating his opinion to various medical staff members.

14. On or about May 25, 2005, with less than twenty-four (24) hours notice and after Dr. Nedd's internal review had been communicated to them, Dr. Ali attended a meeting attended by several members of Greater Southeast's medical staff, including but not limited to Scott Burr, MD (Chair of the Department of Anesthesiology), G. Balikssoon, MD (Chair of the Department of Surgery), Dr. Nelson (Ob-Gyn), Dr. Potter (Chief of Medical Staff) and Cyril Allen, MD (Chief Medical Officer). There, Dr. Ali was informed that Greater Southeast would enquire as to the four patients

reviewed by Dr. Nedd, who had experienced cerebrovascular accidents (stroke) ("CVA") in the perioperative period.

15. At the May 25, 2005 meeting, Dr. Ali, having previously attributed the patients' CVA's to oversedation by the Anesthesia Department, immediately became aware that the culpability for said adverse events was being wrongfully deflected towards him, rather than the Anesthesia Department, chiefly through the efforts of Drs. Burr and Nedd, both obviously interested parties.

16. After said meeting, Dr. Allen informed Dr. Ali that no formal investigation had commenced as to his professional conduct in the management of the patients at issue, such that no report to any reporting and licensing authority including but not limited to HPLA and the National Practitioner Data Bank ("NPDB") would be required and that strict confidentiality would apply as to the inquiry by the medical staff.

17. Following said meeting Dr. Ali was telephoned by Dr. Burr, who after representing that he was acting on behalf of Greater Southeast, informed him that the matter could be resolved by Dr. Ali's voluntarily surrendering his angioplasty privileges there. Dr. Burr reiterated that no reports to the NPDB or HPLA would be made as no investigation had occurred and that the matter would be held in confidentiality, not made public and subsequently closed. Dr. Ali relied upon said assertions in his subsequent decision making.

18. Believing it in the best interests of his patients, concerned as to their safety in the hands of the Greater Southeast Department of Anesthesia and understanding that no reporting to the NPDB or HPLA would be made, Dr. Ali elected to surrender his angioplasty privileges in May of 2005.

6

19.    On or about June 1, 2005, Greater Southeast, despite the above assertions to Dr. Ali and prior to any external review of the cases at issue, summarily suspended his surgical privileges, whereby he was unable to provide surgical services of any type to his patients at Greater Southeast.

20.    Under the applicable medical staff bylaws, such a summary suspension is reserved only for situations in which the involved practitioner presents an imminent danger to patients and/or other person either employed by or visiting Greater Southeast. All of the cases at issue in the so-called "peer review" were remote, having occurred some months prior, with all patients being subsequently discharged from Greater Southeast after treatment by Dr. Ali.

21.    The medical staff retained the services of Dr. Nutting, who is a cardiologist but not a vascular surgeon, to externally review Dr. Ali's cases at issue following the May 25, 2005 meeting, apparently without providing him complete medical records or pre and postoperative radiographs of the involved patients.

22.    Nonetheless, Dr. Nutting reviewed the materials he was provided and produced a report to the medical staff concerning Dr. Ali which concluded that he had violated (in varying degrees) the standard of care in regards to the four patient cases under investigation by the medical staff.

23.    In each relevant case he reviewed, Dr. Nutting opined that Dr. Ali did not contribute to any patient's suffering a CVA, but failed to recognize the techniques utilized by Dr. Ali in performing atherectomies and other endovascular procedures and because he was not provided the relevant radiographs, could not ascertain that said procedures had actually been performed.

7

24. Despite the assertions of Drs. Burr and Allen, Greater Southeast incorrectly reported Dr. Ali's surrender of his angioplasty privileges to the HPLA and the NPDB, claiming that Greater Southeast had investigated him and suspended all of his surgical privileges from on or about June 1, 2005 through August 18, 2005.

25. On August 18, 2005, after reviewing Dr. Nutting's external review, the peer review committee at Greater Southeast reinstated Dr. Ali's surgical privileges with the exception of those to perform angioplasty, which he had previously voluntarily surrendered under duress from the medical staff officers and representatives.

26. On January 26, 2006, the Administrator of HPLA issued a *Notice of Summary Action to Suspend License* ("Notice") charging *inter alia* that Dr. Ali presented an "imminent danger to the health and safety of the residents of the District of Columbia...". D.C. Code, 2001 Ed. §§ 3-1205.14(a) and 3-1205.15(a). Said Notice contained four charges with specifications in support of said charges. Those charges included:

    a. Charge II – willfully making a misrepresentation in treatment;

    b. Charge II – willfully making or filing a false report or record in the practice of a health profession

    c. Charge III – failing to conform to standards of acceptable conduct and prevailing practice with a health profession; and

    d. Charge IV - demonstrating a willful or careless disregard for the health, welfare or safety of a patient

27. On January 30, 2006, Dr. Ali timely filed a Request for a Hearing before the District of Columbia Office of Administrative Hearings, said Hearing being conducted on

February 9, 10 and 23, 2006, Dr. Ali, successfully admitted numerous exhibits and presenting Manisha Singal, MD, an internist, as an expert witness.

28. On February 28, 2006, by Order of the Honorable Jesse P. Goode, HPLA's Notice issued to Dr. Ali was reversed and vacated, his District of Columbia and Maryland Licenses being subsequently reinstated and Greater Southeast's Reports to the NPDB and FSMB being withdrawn of its own initiative. Judge Goode's decision is attached hereto and incorporated herein in its entirety by reference. ("Exhibit 1")

29. Pursuant to *HCQIA* at 42 U.S.C. § 11112(a) and as described in Greater Southeast's Medical Staff Bylaws, HPLA and Greater Southeast owed a duty of care to Dr. Ali in the performance of professional peer review amounting to a *per se* standard minimally commensurate with the immunity provisions.

30. Greater Southeast recklessly allowed and conspired with Dr. Nedd, a direct economic competitor of Dr. Ali, to initiate an unreasonable, fraudulent and unnecessary peer review and subverted what should have been a non-biased, fundamentally fair process into a vehicle to restrain trade.

31. Greater Southeast allowed Dr. Nedd to conspire with the Greater Southeast medical staff leadership to effectively revoke Dr. Ali's surgical privileges through constructive summary suspension prior to the initiation or completion of any evidentiary fair hearing process and in the complete absence of any procedural due process as outlined in the applicable medical staff bylaws.

32. Greater Southeast denied Dr. Ali the opportunity to meet with appropriate committees as contemplated in the applicable medical staff bylaws before initiation of action against his clinical privileges.

33. Greater Southeast deprived Dr. Ali any hearing on the merits in regard to those allegations against him.

34. Greater Southeast allowed and ratified Dr. Nedd's participation in the peer review process leading to Dr. Ali's summary suspension.

35. Greater Southeast knew that Dr. Nedd was Dr. Ali's primary economic competitor and allowed him to participate in the investigative process when he was an obviously biased party with a conflict of interest.

36. Dr. Nedd made false statements and presented a fraudulent internal peer review report to the Greater Southeast Medical Staff wrongfully and willfully critical of Dr. Ali's management of the four patients at issue in the peer review.

37. Dr. Burr made false statements and wrongfully asserted that Dr. Ali was at fault in the management of those patients at issue who had experienced CVA's.

38. Greater Southeast failed to exercise due care in summarily suspending Dr. Ali's surgical privileges based only upon allegations by Dr. Nedd prior to any external review or participation by a disinterested party.

39. Greater Southeast failed to provide the Dr. Ali a detailed explanation as to the specific reason and rationale on which its decision to suspend all of his surgical privileges was based when no merits hearing had been held and none of the cases at issue even involved open surgery, rather only endovascular techniques.

40. Pursuant to the District's Medical Practices Act ("Act") codified at D.C. Code § 3-1205 et seq. at § 3-1205.15:

   a. **If the Mayor determines, after investigation, that the conduct of a licensee presents an imminent danger (emphasis added) to the health and safety of the residents of the District, the Mayor may summarily suspend or restrict, without a hearing, the license to practice a health occupation.**

      **b.**  **The Mayor, at the time of the summary suspension or restriction of a license, shall provide the licensee with written notice stating the action that is being taken, the basis for the action, and the right of the licensee to request a hearing.**

      **c.**  **A licensee shall have the right to request a hearing within 72 hours after service of notice of the summary suspension or restriction of license. The Mayor shall hold a hearing within 72 hours of receipt of a timely request, and shall issue a decision within 72 hours after the hearing.**

***

Here, Dr. Ali never received any communication from the Mayor, only the HPLA and his license was suspended prior to any substantive investigation, the HPLA accepting the fraudulent allegations of Greater Southeast as true. HPLA never documented, investigated nor noticed Dr. Ali as to how he presented any danger of imminent harm.

41.     Additionally, at § 3.1205.14(a), the Act describes those infractions, which, if committed by a practitioner, authorize the Board to exact discipline, including but not limited to licensure suspension or revocation (§ 3.1205.14(c)). Dr. Ali never committed any of the named infractions, yet his license was summarily suspended prior to any hearing, without meaningful notice and without a meaningful investigation prior to his being deprived of a valuable property right, his license to practice medicine.

## V.   CLAIMS

### FIRST CAUSE OF ACTION:

**Deprivation of Federal Constitutional Rights Under Color of State Law, 42 U.S.C. § 1983 (As to Defendant HPLA)**

Dr. Ali incorporates paragraphs (1) through (41) herein by reference as if fully restated and included herein.

42.     As an agency of the District of Columbia, Defendant HPLA is a state actor for purposes of litigation under 42 U.S.C. §1983 pursuant to applicable case law.

43.    Pursuant to 42 U.S.C. §1983 Dr. Ali must prove that under color of any statute, ordinance, regulation, custom, or usage, of the District of Columbia, the HPLA subjected him (or caused him to be subjected) to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or any of its laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

44.    Defendant HPLA, as a state actor, acted under color of District of Columbia law while exercising its peer review, licensure and regulatory authority over Dr. Ali pursuant to the Act, to federal law and the Fourteenth Amendment of the United States Constitution.

45.    Despite the District's Medical Practice Act's guarantee of a proper investigation, the HPLA failed to independently investigate the merits of Greater Southeast's allegations against Dr. Ali; per Judge Goode's decision, the HPLA relied upon hearsay and in many cases hearsay within hearsay from Greater Southeast.

46.    The HPLA failed to hire an independent and disinterested qualified external reviewer to determine whether Dr. Ali had breached any applicable standard of care in his management of the patients at issue.

47.    The HPLA utilized summary action to suspend Dr. Ali's license (which requires a

risk of imminent harm under the District's Medical Practice Act) in lieu of routine due process procedure under the act wherein Dr. Ali would have been entitled to an evidentiary hearing prior to any action against his license.

48. The HPLA mimicked the fraudulent and improperly conducted peer review process at Greater Southeast, by misstating the same medical and endovascular errors opined by Drs Nedd and Nutting and misspelling the same patient names that it misspelled in its own paperwork.

49. Under color of District of Columbia law, Defendant HPLA subjected Dr. Ali, a United States citizen, to the deprivation of those rights, privileges, and immunities secured by the United States Constitution, specifically his Fourteenth Amendment due process and equal protection guarantees, through its deliberate indifference to fundamental Constitutional due process and the HCQIA indemnity provisions enumerated at 42 U.S.C. § 11112.

50. Defendant HPLA, as an instrumentality of the District (a municipality for purposes of § 1983 litigation), after summary action to suspend Dr. Ali's license to practice medicine, failed to present a single witness with first hand knowledge of the relevant facts as they transpired at Greater Southeast, rather a single investigator testified on behalf of the District and reported only hearsay or in many particular cases hearsay within hearsay. As such there could be no reasonable belief on HPLA's behalf that its actions were in the furtherance of quality health care.

51. HPLA failed to make a reasonable attempt to obtain the facts pertaining to Dr. Ali's peer review matter at Greater Southeast and adjudicated him guilty prior to any

hearing on the merits in utilizing summary process to suspend his license to practice in the District, the State of Maryland subsequently adopting its findings.

52.    HPLA failed to afford Dr. Ali Fourteenth Amendment due process or, even at a minimum, an evidentiary hearing prior to depriving him of a recognized valuable property, his professional license to practice his chosen profession of medicine, and specifically vascular and transplant surgery.

53.    HPLA did not have a reasonable belief that its actions against Dr. Ali were warranted by the facts known as no reasonable effort to obtain the facts had occurred, no evidentiary hearing procedures been employed, and it apparently relied solely on hearsay and in many cases, hearsay within hearsay.

54.    By summarily suspending Dr. Ali's medical license in the absence of direct evidence of any violation of the Medical Practice Act and with the deficiencies as pled above, HPLA, under color of District law, violated his Constitutional rights with said violation being at a minimum negligent and alternatively amounting to deliberate indifference to his Fifth and Fourteenth Amendment Due Process rights and for which Dr. Ali is hereby petitioning for redress.

55.    Said actions and inactions by HPLA are a proximate cause and cause in fact of Dr. Ali's damages as pled below.

### SECOND CAUSE OF ACTION:
### Negligence in Investigative and Procedural Peer Review Process
### (As to Defendants Greater Southeast and HPLA)

Dr. Ali incorporates paragraphs (1) through (55) herein by reference as if fully restated and included herein.

56.    HPLA and Greater Southeast owed a duty of care to the Dr. Ali in the performance of

professional peer review amounting at a minimum to a per se standard minimally commensurate with the immunity provisions of *HCQIA* at 42 U.S.C. § 11112(a), the Act as previously cited and as described in Greater Southeast's Medical Staff Bylaws.

57.    HPLA, as an instrumentality of the District (a municipality for purposes of § 1983 litigation) owed Dr. Ali Fourteenth Amendment due process as a state actor in this context.

58.    HPLA, under the Act, owed a duty to Dr Ali to adequately investigate those allegations made against him by Greater Southeast prior to summarily suspending his license to practice, an action that derivatively proximately and directly caused the loss of his license(s) to practice.

59.    Greater Southeast, acting with malice and in contravention of its Medical Staff Bylaws, and HPLA negligently, breached said respective duties, and in the case of Greater Southeast, the applicable medical staff bylaws in the following particulars:

**AS TO GREATER SOUTHEAST:**

a.  In recklessly allowing and conspiring with Dr. Nedd, a direct economic competitor of Dr. Ali, to initiate an unreasonable and unnecessary peer review and subvert what should have been a non-biased, fundamentally fair process into a vehicle of trade restraint, wherein Dr. Ali was unable to effectively compete with Dr. Nedd, or even practice medicine at all for a prolonged period, his reputation and professional standing continuing to suffer;

b.  In allowing Dr. Nedd to conspire with the Greater Southeast medical staff leadership to effectively revoke Dr. Ali's surgical privileges through constructive summary suspension prior to the initiation or completion of any evidentiary fair

hearing process and in the complete absence of any procedural due process as outlined in the applicable medical staff bylaws;

c.  In denying Dr. Ali the opportunity to meet with appropriate committees as contemplated in the applicable medical staff bylaws before initiation of action against his clinical privileges, particularly when he had not received any hearing on the merits in regard to those allegations against him;

d.  In initially allowing and ratifying Dr. Nedd's participation in the peer review process leading to Dr. Ali's summary suspension and in allowing his ongoing participation in the investigative process when he was an obviously biased party with a conflict of interest (since Dr. Ali was Dr. Nedd's primary economic competitor;

e.  In failing to exercise due care in summarily suspending Dr. Ali's surgical privileges based only upon allegations by Dr. Nedd prior to any external review or participation by a disinterested party; and

f.  In failing to provide the Dr. Ali a detailed explanation as to the specific reason and rationale on which its decision to suspend all of his surgical privileges was based when no merits hearing had been held and none of the cases at issue even involved open surgery, rather only endovascular techniques.

**AS TO HPLA:**

g.  In failing to investigate independently the merits of Greater Southeast's allegations against Dr. Ali, instead relying upon hearsay and in many cases hearsay within hearsay per Judge Goode's decision;

h.  In failing to independently hire a disinterested qualified external reviewer to

determine whether Dr. Ali had breached any applicable standard of care in his management of the patients at issue;

i.  In utilizing summary action to suspend Dr. Ali's license (which requires a risk of imminent harm under the District's Medical Practice Act) in lieu of routine due process procedure under the act wherein Dr. Ali would have been entitled to an evidentiary hearing prior to any action against his license;

j.  In mimicking so closely the fraudulent and improperly conducted peer review process at Greater Southeast, not only in misstating the same medical and endovascular errors opined by Drs Nedd and Nutting, but in even misspelling the same patient names.

60.  Greater Southeast and HPLA's cumulative actions are a proximate cause and cause in fact of the Dr. Ali's substantial damages alleged below.

### THIRD CAUSE OF ACTION:
### Breach of Contract (As to Defendant Greater Southeast)

Dr. Ali incorporates paragraphs (1) through (60) herein by reference as if fully restated and included herein.

61.  In order to prevail in a claim for breach of contract, a plaintiff must prove:

a.  An existing contract;

b.  Knowledge by defendant of the contract;

c.  Intentional procurement of its breach by the defendant; and

d.  Damages resulting from the breach.

62.  Greater Southeast's medical staff bylaws represent a binding contract entered into by the respective parties, in this case Greater Southeast, who granted Dr. Ali a right to practice surgery as a member of its clinical staff exchanging said right for a bilateral

duty of compliance with the Medical Staff Bylaws.

63.    Said bilateral duty of compliance was renewed biannually when Dr. Ali was re-
credentialed and reappointed to the medical staff, assenting to abide by Greater
Southeast's Medical Staff Bylaws.

64.    Greater Southeast, through its agents and representatives knowingly and maliciously
failed to perform its duty to Dr. Ali under its bylaws by failing to exclude the
influence of Dr. Nedd, a known direct economic competitor of Dr. Ali and/or at a
minimum obtain a qualified external review of his endovascular work prior to
summarily suspending his surgical privileges.

65.    Greater Southeast, through its agents and representatives knowingly and maliciously
failed to perform its duty to Dr. Ali under its bylaws by failing afford Dr. Ali an
evidentiary hearing as contemplated in the applicable Medical Staff Bylaws.

66.    Greater Southeast, through its agents and representatives knowingly and maliciously
failed to perform its duty to Dr. Ali under its bylaws by misapplying and abusing the
summary suspension procedure described in the Medical Staff Bylaws, wherein
summary suspension is reserved for situations where action must be taken
immediately in the best interest of patient care in the hospital (in the absence of an
evidentiary hearing); such was not the case here, where the Dr. Ali posed no danger
to patient care whatsoever.

67.    Greater Southeast fraudulently intended to breach its contract with Dr. Ali based upon
knowingly false information presented within Dr. Nedd's internal review and the
external review of Dr. Nutting that Dr. Ali breached applicable standards of care in
the patient cases at issue.  Dr. Burr chose to shift proper culpability for the patients' at

issue CVA's to Dr. Ali alleging that Dr. Ali breached applicable standards of care when the patients' CVA's rightfully were the fault of the Anesthesia Department. No such breaches had truly occurred, nor could they in any way be attributed to Dr. Ali.

68.   Here, multiple fraudulent acts accompanied the breach in the medical staff bylaws, namely:

   a.   Dr. Nedd knowingly submitted a false and fraudulent internal review of the involved patient cases.

   b.   Dr. Nutting knowingly submitted a false and fraudulent external review of the involved patient cases.

   c.   Dr. Burr fraudulent knowingly and fraudulently affirmed the false and fraudulent reviews of Drs. Nedd and Nutting.

   d.   Dr. Burr wrongfully implicating Dr. Ali in the patient complications at issue in the peer review, knowing in reality any breaches in applicable standards of care occurred only in the patients' anesthesia management.

69.   The summary suspension of Dr. Ali's surgical privileges by the medical staff when the medical staff and particularly Dr. Burr knew, or should have known, that the Anesthesia Department was the culpable party, that Dr. Ali had breached no applicable standards and that summary suspension was not warranted was a breach of the applicable bylaws, as Dr. Ali did not impose a threat of imminent harm to anyone.

70.   Drs. Allen and Burr fraudulently asserted that if Dr. Ali surrendered his angioplasty privileges that no reporting to the NPDB, HPLA and/or other relevant entities would occur.

71.    These and other breaches in the applicable Medical Staff Bylaws were a proximate

cause and cause in fact of the damages sustained by Dr. Ali as pled below.

## FOURTH CAUSE OF ACTION:
### Promissory Estoppel as Alternative to Breach of Contract
### (As to Defendant Greater Southeast)

Dr. Ali incorporates paragraphs (1) through (71) herein by reference as if fully restated

and included herein.

72.    In order for a plaintiff to prove a claim of promissory estoppel they most prove:

    a.  The existence of a promise; which

    b.  The promisor should reasonably expect to induce action or forbearance of a

       definite and substantial character on the part of the promisee and which does

       induce detrimental reliance; and

    c.  Which is binding if injustice can be avoided only by enforcement of the promise.

73.    Reliance upon the Greater Southeast Medical Staff Bylaws by a member of the

medical staff such as Dr. Ali is expected and foreseeable by Greater Southeast as the

party drafting said bylaws and making the promises therein.

74.    Greater Southeast's Medical Staff Bylaws expressly promised Dr. Ali certain specific

substantive and procedural rights which are unambiguous in their terms.

75.    Pursuant to the bylaws summary suspension is reserved for specific instances

wherein imminent harm threatens the best interest of patient care.

76.    Pursuant to the bylaws Dr. Ali was entitled to a review by an investigatory ad hoc

committee.

77.    Dr. Ali reasonably relied upon said promises contained in the Greater Southeast

Medical Staff Bylaws to encompass physician members of the medical staff such as

him.

78.    As a direct and proximate result of his detrimental reliance upon the Greater

Southeast Medical Staff Bylaws, Dr. Ali sustained those damages as pled below.

### FIFTH CAUSE OF ACTION:
### Tortuous Interference with Prospective Business Advantage and Contract
### (As to Defendants Greater Southeast, HPLA, Dr. Burr and Dr. Nedd)

Dr. Ali incorporates paragraphs (1) through (78) herein by reference as if fully restated

and included herein.

79.    In order for a plaintiff to prevail in a claim for tortuous interference with prospective

business advantages and contract they must prove:

a.    The existence of a contract;

b.    Knowledge of the contract;

c.    Intentional procurement of a breach of the contract; and

d.    Damages resulting from the breach.

80.    Dr. Ali maintained an express contract with Greater Southeast thru its applicable

Medical Staff Bylaws where he was allowed to practice vascular surgery.

81.    Dr. Ali maintained express contracts with numerous managed care entities as a

member of their respective provider panels and implied contracts with his individual

patients, both mandating the delivery of professional quality general surgical health

care services.

82.    Greater Southeast, Dr. Nedd, Dr. Burr and HPLA knew or should have known of the

existence of these contracts.

83.    Drs. Nedd and Burr, intentionally, maliciously and fraudulently caused the breach of

the Greater Southeast Medical Staff Bylaws, acting in concert with Greater Southeast

tortuously interfered with Dr. Ali's express managed care contracts and implied patient-physician contracts.

84. As a direct and proximate result of Drs. Nedd, Burr and Greater Southeast bad-faith peer review and deprivation of fundamental due process rights Dr. Ali was harmed in his existing patient and managed care contracts, their resulting termination, as well as Dr. Ali's inability to obtain prospective economic advantage through similar future contracts with patients and managed care entities.

85. Dr. Nedd's and Greater Southeast's actions directly and tortuously interfered with patient-third parties contracting with the Dr. Ali and his practice as his patients were unable to obtain hospital-based services from him following his summary suspension and later revocation of clinical privileges.

86. Said actions on the part of Greater Southeast and Dr. Nedd occurred without justification whatsoever and furthered the anticompetitive and unfair trade practice conspiracy as described.

87. Said actions were a proximate cause and cause in fact of the damages sustained by Dr. Ali as pled below.

**SIXTH CAUSE OF ACTION:**
**Fraudulent Misrepresentation**
**(As to Defendants Greater Southeast, Dr. Burr and Dr. Nedd)**

Dr. Ali incorporates paragraphs (1) through (87) herein by reference as if fully restated and included herein.

88. In order for a plaintiff to succeed in a claim of fraud they must prove:

   a. A false representation;

   b. Made in reference to a material fact;

22

    c.  With knowledge of its falsity;

    d.  With the intent to deceive; and

    e.  An action that is taken in reliance upon the representation.

89.    Drs. Allen, Nedd, Burr and Greater Southeast, through its organized medical staff, made knowingly false representations to Dr. Ali in communicating and assuring him that if he surrendered his angioplasty privileges, no further action would be taken against him and no reports would be made to municipal, state and/or federal agencies.

90.    Dr. Ali knew his ability to practice medicine and earn a living would be compromised if a negative report was made to any municipal, state and/or federal agencies and he would not have agreed to surrender said privileges had he known a report would be generated.

91.    Agents of Greater Southeast, through its organized medical staff, made these statements to Dr. Ali with the intent to deceive and to force him to surrender his angioplasty privileges.

92.    Dr. Ali relying to his detriment on the false and deceiving representations surrendered his angioplasty privileges at Greater Southeast and elected not to vigorously defend his professional conduct.

93.    Said fraudulent misrepresentation was a proximate cause and cause in fact of those damages sustained by Dr. Ali as pled below.

## SEVENTH CAUSE OF ACTION:
### Negligent Misrepresentation (As to Defendants Greater Southeast, Dr. Burr and Dr. Nedd)

Dr. Ali incorporates paragraphs (1) through (93) herein by reference as if fully restated and included herein.

94.    Under District of Columbia law, in order for a plaintiff to succeed in a claim of

negligent misrepresentation they must prove:

a.    That the Defendant(s) negligently communicated false information;

b.    That the Defendant(s) intended or should have recognized that Plaintiff would

likely be imperiled by action taken in reliance upon the misrepresentation; and

c.    That plaintiff reasonably relied upon the false information to his detriment.

95.    Drs. Burr and Allen, on behalf of Greater Southeast made false statements and/or

omissions of fact when they assured Dr. Ali that as no investigation had formally

been undertaken in the peer review arena and that no report would be generated to

HPLA, the NPDB and other municipal, state and federal agencies.

96.    Dr. Nedd negligently represented that Dr. Ali had breached applicable standards of

care in his management of the patients at issue in the peer review.

97.    Statements by agents of Greater Southeast' violated the duty to exercise reasonable

care in the conduct of professional peer review.

98.    Drs. Nedd and Burr, in their wrongful allegations against Dr. Ali, acted outside the

scope of their respective agencies at Greater Southeast.

99.    The false statements and/or omissions involved material issues upon which Dr. Ali

reasonably relied to his detriment in assuming that if he cooperated and voluntarily

surrendered his angioplasty privileges at Greater Southeast, he could continue to

practice at Greater Southeast and not be disparaged through a formal report which

could affect his ability to practice medicine.

100.    Said negligent misrepresentations were a proximate cause and cause in fact of those

damages sustained by Dr. Ali as pled below.

## EIGHTH CAUSE OF ACTION:
### Intentional Infliction of Emotional Distress
### (As to Defendants Dr. Nedd, Dr. Burr, HPLA and Greater Southeast)

Dr. Ali incorporates paragraphs (1) through (100) herein by reference as if fully restated and included herein.

101.    Under District of Columbia law, in order for a plaintiff to succeed in a claim of intentional infliction of emotional distress they must prove:

    a.  Extreme and outrageous conduct on the part of the defendant which;

    b.  Either intentionally or recklessly;

    c.  Causes the plaintiff severe emotional distress.

102.    Greater Southeast's, Dr. Burr's and Dr. Nedd's intentional conduct in promulgating and conducting a bad-faith peer review, wrongfully resulting in the loss of Dr. Ali's medical licenses in the District and Maryland was extreme and outrageous.

103.    The HPLA acted intentionally in ratifying the fraudulent and unproven peer review findings of Greater Southeast (largely based upon Dr, Nedd's internal review) without independent verification, independent qualified external review and in utilizing summary action as opposed to its routine procedural methods (which would have afforded due process and an evidentiary hearing) in acting against Dr. Ali's license.

104.    Greater Southeast in retaining Dr. Nutting as an external reviewer failed to choose a properly qualified individual with endovascular experience equivalent to Dr. Ali's and then failed to provide his with full documentation, including, but not limited to the relevant patient radiographs.

105.    Dr. Burr's, Greater Southeast's and Dr. Nedd's conduct to promulgate the biased, anticompetitive and unsupported allegations of substandard medical care by Dr. Ali to

the advantage of his chief economic competitor, has been unequivocally atrocious, outrageous in character, so extreme in degree as to go beyond all bounds of decency and is utterly intolerable in a civilized community.

106.    Greater Southeast, HPLA, Dr. Burr and Dr. Nedd acted intentionally against Dr, Ali to inflict anhedonia, profound misery, shame, disgrace, depression, anxiety, loss of enjoyment of life and severe emotional distress including physical illness and injury. These damages are in addition to those pled below.

107.    A special relationship exists between physicians and hospital entities such that unjust deprivation of clinical privileges is akin to termination of a *de facto* employer-employee relationship and likewise has substantial impact on the third party physician-patient special relationship.

108.    As a result of this special relationship a lower standard of outrageous conduct should be applicable herein for the Dr. Ali to viably state this claim against these Defendants.

## NINTH CAUSE OF ACTION:
### Violation of District of Columbia Unlawful Trade Practices Act
### (As to Defendant Wilton Nedd, MD)

Dr. Ali incorporates paragraphs (1) through (108) herein by reference as if fully restated and included herein.

109.    Pursuant to the District of Columbia Unlawful Trade Practices Act in order to succeed on a claim brought under the Act a plaintiff must prove that:

  a.  The Defendant(s) disparaged the goods, services, or business of another by false or misleading representations of material facts; or

  b.  The Defendant(s) represented that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another; or

26

   c.  The Defendant(s) misrepresented as to a material fact which has a tendency to mislead.

110.   Dr. Nedd falsely and fraudulently represented that Dr. Ali's professional services as a vascular surgeon were characteristically inferior to those of his peer group.

111.   Dr. Nedd falsely and fraudulently represented that Dr. Ali's professional services as an endovascular surgeon were of an inferior standard, and quality, when in reality they were superior to those previously available at Greater Southeast.

112.   Dr. Nedd falsely and fraudulently misrepresented material facts pertaining to Dr. Ai's professional services which had a tendency to mislead; failed to state certain material facts tending to mislead; and disparaged the professional services of Dr. Ali by false and/or misleading representations of material facts, all in violation of D.C. Code § 28-2904.

113.   Violation of this statute was a proximate cause and cause in fact of those damages sustained by Dr. Ali as pled below.

## VI.   DAMAGES

114.   Based upon the prior claims, Dr. Ali has been injured in various ways, as set out below, and is entitled to damages including but not limited to the following.

115.   As a result of these violations Dr. Ali sustained damage in the form of his property interest in his two medical licenses, which resulted in his inability to perform surgery at any Hospital's facilities or to practice in his private office during the time he was unlicensed.

116.   As a direct and proximate result of Defendants' acts and/or omissions, Dr. Ali has sustained damages in an amount exceeding $75,000.00 for loss of income and other financial injuries (an exact amount to be determined at trial).

117.   As a direct and proximate result of Defendants' acts and/or omissions, Dr. Ali has sustained damage in the form of present and subsequent humiliation, present and subsequent loss and/or stigmatization of reputation, present and subsequent loss of dignity, present and subsequent loss of patient referrals, present and subsequent significant pecuniary loss, present and subsequent loss of managed care and insurance contracts and their inherent value, substantial attorney fees in defending against the charges, coincident inability to be licensed in other jurisdictions and loss of ability to obtain privileges at multiple Health Systems, present and subsequent physical distress, emotional distress, anhedonia, loss to reputation, loss to future advantageous career opportunities, emotional distress, and harm to his family life.

118.   Under 42 U.S.C. § 1983, Dr. Ali is entitled to compensatory and punitive damages, against all applicable Defendants for the losses he sustained as the result of their actions and attorney fees.

119.   Dr. Ali seeks, as appropriate, attorney's fees, interest and costs and such other legal and equitable relief as the Court may deem appropriate.

**WHEREFORE**, Plaintiff, Dr. Ali, prays for relief against Defendants, Envision Hospital Corporation, d.b.a. Greater Southeast Hospital of Washington, District of Columbia Department of Health, Health Regulation and Licensing Administration, Wilton Nedd, M.D., and Scott Burr, M.D., under his claims against said Defendants as asserted above, and for all other relief just and proper in the premises.

## VI.    REQUEST FOR TRIAL BY JURY

Comes now Plaintiff, Dr. Ali, and requests a trial by jury with respect to all claims asserted herein.


Respectfully Submitted,

**MEDICOLEGAL CONSULTANTS, LLC**


C. William Hinnant, Jr. MD JD
Federal Bar # 9129
112 Essex Drive
Anderson, SC 29621
(864) 226-6132, Fax: 864-225-0830

**CULOTTA & CULOTTA, LLP**


Jennifer Hinkebein Culotta
District of Columbia Bar. # 476566
432 E. Court Avenue
Jeffersonville, IN 47130
Telephone No. (812) 288-5141


**ATTORNEYS FOR DR. ALI**



Dated: March 10, 2008
Anderson, South Carolina

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Ahmed Ali, MD | Envision Hospital Corporation, d/b/a Greater Southeast Hospital; Distrcct of Columbia Dept. of Health, Health Regulation and Licensing Administration; Scott C. Burr, MD; Wilton O. Nedd, MD |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___88888___ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___88888___ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) C. William Hinnant, Jr., Medicolegal Consultants, LLC, 112 Essex Dr., Anderson, SC 29621, 864-226-6132; Jennifer Hinkebein Culotta, Culotta & Culotta, LLP, 1615 L. Street NW, Suite 1350, Washington, DC 20036, 202-457-8888 | Case: 1:08-cv-00431 Assigned To : Kollar-Kotelly, Colleen Assign. Date : 3/12/2008 Description: Civil Rights-Non-Employ. |
|---|---|

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

O 1 U.S. Government Plaintiff

⊙ 3 Federal Question (U.S. Government Not a Party)

O 2 U.S. Government Defendant

O 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**O A. Antitrust**

☐ 410 Antitrust

**O B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**O C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**O D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**O E. General Civil (Other)    OR    O F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ◉ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 U.S.C. 1983 & supplemental State Claims -- Negligent investigation and procedural peer review; wrongful license suspension

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ greater than 5000.00   Check YES only if demanded in complaint

JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  March 7, 2008   SIGNATURE OF ATTORNEY OF RECORD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.