## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

AHMED ALI,               )
                            )
        **Plaintiff,**      )      **Docket Number: 2008 CV 431**
                            )      **Judge Colleen Kollar-Kotelly**
       **v.**               )
                            )
**ENVISION HOSPITAL**    )
**CORPORATION, et. al.**    )
                            )
      **Defendants.**     )
_____)

## DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS OR, IN
## THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

The District of Columbia (including the Department of Health and the Health Professional Licensing Administration), by its attorney the Office of the Attorney General for the District of Columbia, moves this Court to dismiss the complaint against the District or, in the alternative, grant summary judgment in favor of the District for the following reasons:

1.      Plaintiff fails to state a claim against the District of Columbia for which relief can be granted, thus, his complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

2.      Because Plaintiff's federal claim is unsubstantiated, this Court lacks jurisdiction over the common law claims.

3.      No genuine issues of material fact exist that support a valid claim against the District; thus, as a matter of law, summary judgment in favor of the District is appropriate.

WHEREFORE, for the reasons stated in the accompanying memorandum of points and authorities, the District of Columbia respectfully requests this Honorable Court to dismiss Plaintiff's claims against the District of Columbia or, in the alternative, grant summary judgment in favor of the District of Columbia. A statement of material facts as to which there are no genuine dispute ("SOMF") and proposed alternative orders are filed herewith.

<div style="margin-left: 40%;">

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


____/s/ Ellen A. Efros_____
ELLEN A. EFROS [250746]
Chief, Equity I Section
Civil Litigation Division


___/s/  Jayme B. Kantor _____
Jayme B. Kantor [488502]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
P(202) 724-6627
F(202) 727-3625

</div>

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AHMED ALI, | ) | |
| | ) | |
| Plaintiff, | ) | **Docket Number: 2008 CV 431** |
| | ) | **Judge Colleen Kollar-Kotelly** |
| v. | ) | |
| | ) | |
| ENVISION HOSPITAL | ) | |
| CORPORATION, et. al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANT DISTRICT OF COLUMBIA'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR
SUMMARY JUDGMENT**

**Introduction**

The District of Columbia, through is agencies, Boards, and commissions, has an obligation to the public to protect it from imminent danger. Pursuant to that obligation, the Mayor, through his administrative agencies, regulates certain professional licenses as a matter of public health and safety. This case concerns the license to practice medicine. One must be licensed by the District of Columbia to practice medicine and one must abide by the standards of practice to maintain a license, lest it be suspended. Here, the District temporarily suspended Plaintiff's license to practice medicine, acting upon information from two sources. First, it received the National Practitioners Databank ("NPDB") report that Plaintiff had voluntarily surrendered his privileges during an investigation at the hospital where he practiced. Second, the District received information from the Greater Southeast Hospital (a.k.a. co-defendant Envision Hospital Corporation, hereinafter referred to as the "Hospital") that a medical practitioner, the

Plaintiff, had his privileges suspended for violating the standard of care in the treatment of four patients at the hospital.

The District followed its obligation to afford Plaintiff due process when it properly notified him of the summary suspension of his license and provided him a timely hearing.  *See* D.C. Code § 3-1205.15 and 17 D.C.M.R. 4118.[1]  Thus, there was no due process violation.  Plaintiff's common law claims cannot survive a motion to dismiss, nor are there any genuine issues of material fact in dispute that would preclude judgment as a matter of law.

### Statement of Facts

Dr. Ali is licensed to practice medicine in the District of Columbia.  The licensing administration that regulates medical licenses is the Health Professional Licensing Administration ("HPLA"), which is an administrative body within the District of Columbia Department of Health ("DOH").  The Board of Medicine is the entity within the DOH that evaluates applicants' qualifications, recommends regulations, standards, and procedures, and issues licenses. The Board also requests investigations, conducts hearings, implements disciplinary and/or remedial action where indicated.  On August 24, 2005, the Director of the Board of Medicine, James Granger, received a National Practitioners Databank ("NPDB") report from the Greater Southeast Hospital (the "Hospital") that a physician at the hospital had surrendered his privileges.  *See*

---

[1] Plaintiff mistakenly believes that the Mayor himself had to communicate with Plaintiff.  *Complaint*, ¶ 40.  However, the Mayor may delegate his functions.  D.C. Code § 1-204.22(6).  The authority vested in the Mayor by D.C. Code § 3-1205.15 to summarily suspend the license to practice a health occupation has been delegated to the Department of Health through Mayor's Order 98-140. This Order delegates to the Director of the Department of Health the authority to implement, administer and enforce the "Health Occupations Revision Act of 1985," codified at D.C. Code § 3-1201, *et seq.*

*Declaration of James Granger* ("Granger Decl."), ¶ 3; *See also Statement of Material Facts,* ("SOMF") ¶ 7.

When DOH receives an NPDB report that a physician surrendered his privileges, it is standard procedure that the Director of the Board of Medicine initiate an investigation. *Granger Decl.,* ¶ 4. Such occurred here – the investigation began immediately upon the Board of Medicine receiving the NPDB report. *Id.* During the investigation, materials were gathered from the Hospital that related to Plaintiff's surrender of his privileges. *SOMF,* ¶ 9. The Board's investigation consisted of the review of the Hospital's internal and external peer review reports, as well as correspondence between Plaintiff and the Hospital. *Granger Decl.,* ¶ 5. Included in the correspondence was Plaintiff's notice to the Hospital of his voluntary surrender of his angioplasty privileges. *SOMF,* ¶ 4. This occurred while the Hospital was still investigating the four patients under Plaintiff's care who suffered adverse effects. *SOMF,* ¶ 5. The Board's investigation was completed in November of 2005. After reviewing all of the material provided by the Hospital from its internal and external peer reviews, the Board voted to summarily suspend Plaintiff's license.

On January 27, 2006, Plaintiff was served notice of the summary suspension. *SOMF,* ¶ 14. On January 30, 2006, Plaintiff requested a hearing, as the notice informed him that he had the right to do, and the Office of Administrative Hearings ("OAH") scheduled the hearing for February 2, 2006. *SOMF,* ¶ 15. Plaintiff moved for a continuance of this hearing and it was reset for February 9, 2006. *SOMF,* ¶ 8. The hearing concluded on February 23, 2006, and the ALJ issued an order vacating the

summary suspension on February 28, 2006.  The Board immediately lifted Plaintiff's suspension.  *SOMF*, ¶ 18-19.

### Standard of Review

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept the allegations in the complaint as true. *See, e.g.*, *Croixland Properties Ltd. Partnership v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999).   To withstand a motion to dismiss, Plaintiff must "provide the 'grounds' of his 'entitlement to relief'" with facts that are neither "labels and conclusions" nor "formulaic recitation of the elements of the cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  Plaintiff must assert facts that "raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.

In a Rule 12(b)(6) analysis, while the complaint is to be construed liberally, courts "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) [*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)]. Moreover, while the court "must assume the truth of all statements proffered by the party opposing summary judgment," it need not consider wholly conclusory statements for which no supporting evidence is offered. *Greene v. Dalton*, 164 F.3d 671, 674–75 (D.C. Cir. 1999).

Thus, a motion to dismiss pursuant to Rule 12(b)(6) should be granted when it appears that, under any reasonable reading of the complaint, plaintiff's right to relief does not rise above a speculative level. *Twombly*, 127 S. Ct. at 1965.  Here, viewing the

allegations of the complaint in the light most favorable to Plaintiff, the facts do not provide grounds for the entitlement to relief Plaintiff seeks.

Alternatively, the District asserts that summary judgment should be entered in its favor in accordance with Fed.R.Civ.P. 56(c).  Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*  Only disputes as to material facts, or facts that might significantly affect the outcome of a suit under governing law, preclude the entry of summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248 (1986).  In other words, it is insufficient to avoid summary judgment that some factual issues remain in the case; an issue must be both *genuine* and *material* to preclude the entry of summary judgment.  *Id.*

If a court considers materials outside the pleadings in a ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must convert the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(b); *see also Haase v. Sessions*, 835 F.2d 902, 905–906 (D.C. Cir. 1987).  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "complete failure of proof concerning an essential element of the non-moving party's case necessarily renders other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Defendant is entitled to summary judgment if it can demonstrate Plaintiff's inability to prove any of the required elements of his case. *Id.* at 321-322.   Mere

allegations or denials are insufficient to defeat a proper summary judgment motion. Rather, Plaintiff bears the affirmative burden to present, by affidavits or other means, *specific facts* showing that there is a genuine issue for trial. *Id.* at 248-49. The adverse party must do more than "show there is some metaphysical doubt as to material facts." *Matsushita Elec. Industries v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Plaintiff's complaint does not present specific facts showing a genuine issue for trial. Thus, the Court should dismiss Plaintiff's complaint, or in the alternative, grant summary judgment in favor of the Defendants.

## ARGUMENT

The only adverse action Plaintiff alleges the District to have taken against him was the summary suspension of his medical license as a result of information from the Hospital. The District, however, gave Plaintiff an opportunity for an immediate hearing. Plaintiff requested and received his hearing and, ultimately, prevailed at that hearing. The only claim now bringing the District into federal court is Plaintiff's allegation of a denial of due process. But, this claim is entirely unfounded because Plaintiff received a timely fair hearing which turned in his favor. Thus, there is no foundation for a due process violation and this Court lacks jurisdiction over any remaining common-law claims. However, even if the Court retains jurisdiction, Plaintiff's common-law claims are, likewise, unsubstantiated. The Court should dismiss the District of Columbia from this action or, in the alternative, grant summary judgment in favor of the District of Columbia.

**A.     The NPDB Report Regarding Plaintiff Insulates the District From Liability For Any Actions Taken As A Result of Receiving the Report's Information**

The NPDB's purpose is "to collect and release certain information relating to the professional competence and conduct of physicians, dentists and other health care practitioners." 45 C.F.R. 60.1.  Reporting on certain matters regarding physicians is mandatory.  Such mandatory reporting occurred here by the Hospital to the NPDB.[2]  The information contained therein must be viewed as accurate.  *Azmat v. Shalala*, 186 F. Supp. 2d 744, 748 (W.D.Ky. 2001), *cited by Doe v. Thompson*, 332 F.Supp. 2d 124 (D.C. 2004).

Plaintiff here did not even challenge the report to the NPDB like the Plaintiffs in *Azmat* and *Doe*.  Without at least mounting a challenge to the report, Plaintiff's case against the District's reliance on the report simply has no basis.[3]  Plaintiff has stated no reason why the District should not have relied upon the NPDB report as accurate.  However, the District did not just rely on the report – it initiated an investigation consisting of a review of all of the Hospital's records regarding the underlying circumstances of why Plaintiff was reported to the NPDB.  For want of any facts in support of his claims against the District, his complaint should be dismissed pursuant to Rule 12(b)(6).

> 1.     *The Health Care Quality Improvement Act ("HCQIA") Affords Immunity in the Peer Review Process That Should be Extended to the District in This Case*

---

[2] The Hospital was also required to report the same information regarding Plaintiff's voluntary surrender of his privileges under investigation to the Board of Medicine pursuant to 42 U.S.C. 11133 and 11134.

[3] If Plaintiff challenged the report pursuant to 45 C.F.R. 60.14, he has not so stated.  Any attempt to do so now would result in opposition for failure to name the necessary federal party charged with maintaining the NPDB and, further, Plaintiff would be time-barred by the two-year statute of limitations.  *See, e.g., Doe v. Thompson*, 332 F.Supp. 2d 124 (statute of limitations under HCQIA and Privacy Act is two years).

By Plaintiff's own admission, 42 U.S.C. 11112(a) applies to the District (through the HPLA).  *Complaint*, ¶ 29.  Section 11112(a) affords a presumption of immunity to the health care entity and the governing body or any committee of a health care entity which conducts professional review activity.[4] *Gabaldoni v Wash. County Hosp. Ass'n*,  250 F.3d 255, 259 (4th Cir. 2001), *citing* 42 U.S.C. § 11151(11).  Plaintiff fails to recognize this immunity aspect of HCQIA – the ultimate decision maker is not required to investigate a matter independently; all that is required is reasonable effort to obtain facts.  *Gabaldoni,* 250 F.3d at 261.  The District in this case certainly expended reasonable efforts to obtain facts prior to issuing a summary suspension.  *Granger Decl.,* ¶ 5-6.  Because the Hospital conducted an internal review, then an external review, then reported information to the NPBD and DOH, the District had no obligation to conduct an "independent" investigation in rendering the ultimate decision to issue a summary suspension.[5]

**B.    Plaintiff's Claim Under § 1983 Lacks the Requisite Support to Impose Municipal Liability**

---

[4] § 11112.  Standards for professional review actions
   (a) In general. For purposes of the protection set forth in section 411(a) [42 USCS § 11111(a)], a professional review action must be taken--
      (1) in the reasonable belief that the action was in the furtherance of quality health care,
      (2) after a reasonable effort to obtain the facts of the matter,
      (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
      (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3). A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in section 411(a) [42 USCS § 11111(a)] unless the presumption is rebutted by a preponderance of the evidence.

[5] Plaintiff should be quite familiar with the HCQIA standard of immunity in light of a similar case he brought against another healthcare institution.  *Ali, et al., v. MedStar Health, et al.*, 2003 D.C. Super. LEXIS 32 (2003).  Much of the record in that case parallels the facts Plaintiff has alleged here – peer review by the hospital he worked for due to substandard record keeping resulting in adverse action against his privileges to practice at the hospital.  *Cf.* OAH record of Final Order in *In Re Ahmed Ali*, DH-B-06800032, attached to *Plaintiff's Complaint*.  In Plaintiff's previous case, the Court held that since the test for peer review immunity is objective, allegations of bad faith are immaterial.  *Ali*, 2003 D.C. Super. LEXIS at 13, *citing Bryan v. Holmes regional Med. Ctr.,* 33 F.3d 1318 (11th Cir. 1994).  That is all Plaintiff appears to allege here, and even "bad faith" is unsupported by factual allegations.

To prevail on a claim under 42 U.S.C. §1983, a plaintiff must show that the deprivation of his constitutional rights was caused by a policy, custom or practice of the District of Columbia, or that a single "municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Board of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 412 (1997).  Plaintiff only asserts the latter – deliberate indifference – as a basis for municipal liability here.[6]

Plaintiff's § 1983 claim is an alternative theory to his negligence claim, but he fails to allege any facts that would raise his right to relief above a speculative level.  *See Complaint*, ¶ 54; *Twombly*, 127 S. Ct. at 1965.  As a preliminary matter, any grounds Plaintiff states for relief under the Fourteenth Amendment cannot be maintained against the District of Columbia and should be summarily dismissed. The Fourteenth Amendment is not applicable to the District of Columbia.  *Bolling v. Sharpe*, 347 U.S. 497 (1954). *See Complaint*, ¶ 44, 49, 52, and 54.

In this case, Plaintiff relies on the HCQIA to establish a duty of care he believes the District owed him.  *Complaint*, ¶ 29.  However, the HCQIA does not provide private individuals with a right to bring actions predicated on § 1983.  *Med. Soc'y v. Mottola*, 320 F. Supp. 2d 254, 276 (NJ 2004).   Thus, any claim Plaintiff alleges under § 1983 cannot be grounded in the provisions of the HCQIA.  Without the HCQIA to establish a standard

---

[6] The District of Columbia reserves the right to further oppose any allegation Plaintiff makes against agency action on other grounds; however, only Plaintiff's allegation of "deliberate indifference" can be gleaned from the complaint.

of medical professional review enforceable by a private party,[7] there is no predicate for a § 1983 claim. Thus, the § 1983 claim cannot withstand a motion to dismiss.

Even without relying on the HCQIA, though this statute is the governing law on medical peer review, Plaintiff asserts no set of facts that could impute knowledge of any wrongdoing in the peer review process at the Hospital to the District.[8] To succeed on a §1983 claim against a municipality "a plaintiff must show a course deliberately pursued by the city, as opposed to an action taken unilaterally by a municipal employee, *and* an affirmative link between the [city's] policy and the particular constitutional violation alleged (citations omitted)." *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986). There is simply no allegation of such a link here. Thus, Plaintiff's § 1983 claim of "deliberate indifference" should be dismissed pursuant to Rule 12(b)(6).

    1.    *Plaintiff Received Due Process*

Plaintiff asserts that his property right in his professional license was infringed upon without due process. *Complaint*, ¶ 52. This is simply inaccurate. Plaintiff received his due process – the administrative hearing on February 10 and 23, 2006.[9] This hearing was only a short time after his license was temporarily suspended on January 27, 2006.

---

[7] The only practical meaning the District can glean from Plaintiff's allegation that the District should have engaged in an "independent investigation" is that he means the District should have had its own medical peer evaluation. Thus, the applicable standard applied would be that espoused in the HCQIA because it is the governing law on medical peer review. And the HCQIA does not provide a private right of action under § 1983.

[8] Plaintiff would need to allege a civil conspiracy to sustain a § 1983 claim and, thus, allege some sort of collusion between the HPLA and the Hospital. No such allegation is made, but this issue has been considered in an analogous case. In *Wahi v. Charleston Area Med. Ctr.*, 453 F. Supp. 2d 942 (S.D.W.V. 2006), Plaintiff doctor alleged that the state Board of Medicine conspired with the hospital to deny him his medical license. *Id.* In that case, Plaintiff "offered no evidence that defendants and the Board of Medicine were not meeting simply to fulfill their obligations and rights under the HCQIA 11133(a)(1)" and did not offer "even a scintilla of evidence that there was communication between [the hospital] and the Board of Medicine beyond that required by law." *Id.* at 959. Such is the case here.

[9] Attached to Plaintiff's Complaint is the ALJ's Final Order in *In Re Ahmed Ali*, DH-B-06-800032. On the second page of this Order, the ALJ states that Respondent, Dr. Ali, moved for a continuance. Thus, any potential delay in what was otherwise an immediate hearing date would be attributable to Plaintiff.

Thus, any alleged deprivation was extremely brief. In determining what process is due, the Court must consider the length and finality of the deprivation. *Gilbert v. Homar*, 520 U.S. 924, 932 (1997). In comparison to *Homar*, Plaintiff here was similarly only subjected to a temporary suspension of his license (Homar was temporarily suspended from his employment) rather than a revocation. *Id*. In fact, any deprivation Plaintiff suffered from the summary suspension by the District was only for a matter of days.

When balanced against the state's significant interest in protecting its citizens from medical misfortunes like the ones suffered by the four patients who were the subjects of the investigation of Plaintiff, his "deprivation" was insubstantial. *Id*., *citing* the balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)("first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail"); *Logan v. Zimmerman Brush Co*., 455 U.S. 422, 434 (1982).

The balancing test applied to Plaintiff's case weighs heavily in favor of the District. Plaintiff's private interest, his practice of medicine, had already been diminished before coming to the attention of DOH. He voluntarily surrendered his angioplasty privileges, automatically triggering a reporting requirement to the NPDB. *Complaint*, ¶ 17-18; 42 U.S.C. 11133. Any subsequent effect on his practice of medicine that may have been caused by the summary suspension of his license for a few days is tempered by this fact.

DOH followed its procedure to investigate an NPDB report of a District physician.  Any dereliction of this duty would have been a disservice to the public.  Plaintiff, without any support, erroneously states that the District must conduct an "independent investigation."  *Complaint*, ¶ 45.  The statute governing the summary suspension of a health professional's license only states "investigation."  D.C. Code § 3-1205.15.  Plaintiff seeks to impose an additional requirement that the District engage in an independent investigation, which is not statutorily required.  Moreover, another peer review would have been unnecessarily duplicitous – the DOH had information that two levels of review already had been undertaken by the Hospital and had no reason to believe there was any problem with this process.  The District complied with the investigation requirement in D.C. Code § 3-1205.15 when it investigated facially valid reports from the Hospital and employed several degrees of review to determine whether Plaintiff's license should be summarily suspended.  *See SOMF*, ¶ 8-11; *Granger Decl.*, ¶ 5-6.

The processes that the District followed included procedural safeguards, although the triggering event of the reporting to NPDB is distinct from any District action.   Any additional procedures that could have been employed prior to the summary suspension would have been beyond the statutory requirements and unlikely to affect the ultimate determination since Plaintiff has provided no support that the District knew there was any problem with the Hospital's report.

The balance in favor of the District can most easily be recognized through the public policy perspective.  Had the District become aware of patients who suffered strokes within a short time frame of one another under the *same* physician's care

following the *same* surgical procedures and ***not*** taken action to prevent further occurrences, another patient could have suffered similar fate.  The District could then potentially be accountable for failing to act.  The least restrictive action the District could take and still protect the public was to issue a summary suspension and, within days, provide Plaintiff with a fair hearing.

Moreover, the record below of administrative activity is a concession that Plaintiff knew of the action against him, the reasons for such action, and was afforded proper process:  1) he was provided with the notice of summary suspension which included each basis for the suspension, 2) he requested a hearing and he prepared for the hearing with clear knowledge of the basis for the summary suspension (even requested more time to do so), and 3) he received a fair hearing.  The Administrative Law Judge ("ALJ"), an entirely neutral judicial officer, found that, at the outset, there was a prima facie case against Dr. Ali and denied his preliminary motion to dismiss.  *In Re Ahmed Ali*, DH-B-06-800032, p. 3 (ALJ Goode), *attached to Complaint*.  This case is an example of the process being completely followed.  It is only the final order by the ALJ that found in favor of Plaintiff after hearing all of the evidence on both sides.  On this record, there is no basis to sustain a claim of denial of due process sufficient to support municipal liability.

Plaintiff also cannot claim punitive damages against the government under § 1983.  There is a well-established presumption against imposition of punitive damages on government entities.  *Barnes v. Gorman*, 536 U.S. 181, 190 (2002); *Newport v. Fact Concerts*, 453 U.S. 247 (1981).  Thus, any damages Plaintiff claims as a result of a § 1983 claims are foreclosed.

2.     **Because Plaintiff's Federal Claim of a Due Process Violation is Unsubstantiated, This Court Lacks Jurisdiction**

The Federal Court lacks jurisdiction if the federal claims are insubstantial. *Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 362 (D.C. Cir. 2007) ("A federal court has jurisdiction over substantial federal claims, together with local law claims that are part of a common nucleus of operative fact. But a federal court lacks jurisdiction altogether if the federal claims are insubstantial."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)(federal claim must have substance sufficient to confer subject matter jurisdiction on the court). Since Plaintiff's due process claim is unsubstantiated, all he is left with are common law claims; thus, this court should dismiss the complaint for want of subject matter jurisdiction. F.R.Civ.P. 12(b)(1).

C.     **Plaintiff's Claim of Negligence Against the District is Unfounded**

The District afforded Plaintiff due process – that is all that was owed. Plaintiff's statement that the District owed a duty to adequately investigate the allegations by the Hospital against him is part of the record in the administrative matter – the District did investigate the report by reviewing the Hospital's internal and external reviews, compiling all of the information obtained from the Hospital into its investigation, and deciding a course of action. Plaintiff's reliance on a duty to conduct an "independent investigation" is meritless because it has no basis in the statutes that authorize the District to issue a summary suspension. More importantly, Plaintiff can only find a duty of care in peer review of medical practitioners in the HCQIA, which, as already established, provides 1) no private right of action, and 2) immunity. *See infra*, p. 6-8. Moreover, the

District had every right to rely on hearsay – no less than a police officer would be able to rely on "hearsay" from eye witnesses in formulating probable cause to arrest a criminal suspect.

There is no evidence of a "breach" of a duty by the District simply by alleging that the investigation was based on hearsay. Even beyond the investigation containing hearsay information, hearsay may also be admitted in administrative hearings. *Hutchinson v. District of Columbia Office of Emple. Appeals*, 710 A.2d 227, 232, (D.C. 1998). However, Plaintiff is certainly not contesting the administrative hearing because he prevailed. Thus, Plaintiff's allegation of some vague dereliction of duty is entirely unfounded – there is no duty to "hire a disinterested qualified external reviewer to determine whether Dr. Ali had breached any applicable standard of care…" *Complaint*, ¶ 59(h).

As stated earlier, when DOH had facially valid investigations by internal and external medical reviewers from the Hospital, there was no reason to go behind them in the agency's investigation. Plaintiff fails to allege any facts to support that the District knew the Hospital's report was "fraudulent and improperly conducted," as Plaintiff alleges. *Complaint*, ¶ 59(j). Thus, the District would be forced to speculate entirely on Plaintiff's claim of negligence against the District, and especially on what Plaintiff may be claiming was a breach of duty. Such insufficient pleading, which causes a defendant to speculate as to the grounds for relief, cannot withstand a motion to dismiss. *Twombly*, 127 S. Ct. at 1965.

Plaintiff fails to state a claim of negligence against the District not only because he fails to support the first two prongs – duty and breach – but also because there is no

connection to harm he alleges to have suffered at the hands of the District. The District

only held his license in suspension for a matter of days. Plaintiff fails to state how this

action caused him harm in the amount of $75,000. *Complaint*, ¶ 116.

Even if Plaintiff could somehow satisfy the basic pleading requirements of a

negligence claim, which is entirely unclear from his complaint, by his own admission, he

was contributorily negligent on two grounds. First, Plaintiff voluntarily relinquished his

angioplasty privileges. *Complaint*, ¶ 18; *SOMF*, ¶ 4. This act by Plaintiff triggered the

Hospital's duty to report to the NPDB. 42 U.S.C. 11133. Second, Plaintiff requested

more time for the hearing after his initial request for a hearing. *SOMF*, ¶ 16. While the

OAH was prepared to hear his case five days after his summary suspension (February 2,

2006), Plaintiff requested more time to prepare.

Plaintiff fails to state a claim of negligence against the District of Columbia and

this claim should be dismissed pursuant to Rule 12(b)(6). There are no genuine issues of

material fact which could entitle Plaintiff to relief on this claim and, as a matter of law,

the District is entitled to summary judgment pursuant to Rule 56(c).

**D.    Plaintiff's Claim of Tortious Interference With Prospective Business
        Advantage and Contract Against the District Should be Summarily
        Dismissed**

Plaintiff does not state one allegation against the District of Columbia that could

put the District on notice of how this claim pertains to the District. Although Plaintiff

states the elements of this claim, he alleges no facts related to the District's knowledge

about any of the elements. Simply stating that the District "knew or should have known

of the existence of these contracts" is insufficient. *Complaint*, ¶ 79-87. It is merely a

legal conclusion cast in the form of factual allegation and cannot withstand a motion to

dismiss. *Kowal v. MCI Communications Corp., Inc.*, 16 F.3d at 1276; *Greene v. Dalton*, 164 F.3d at 674–75. Clearly, the addition of the District to this claim was either a typographical error or a thinly-veiled attempt to scorch the earth for defendants in an otherwise unfounded claim.

**E.     Plaintiff's Claim of Intentional Infliction of Emotional Distress ("IIED") Against the District of Columbia Has No Merit**

There is simply no factual support for this claim against the District of Columbia. Furthermore, Plaintiff's suggestion to lower the standard otherwise applicable to this claim is as meritless as the actual claim for IIED itself. *Complaint*, ¶ 108. Plaintiff presents no set of facts which could establish extreme and outrageous conduct by the District. The District investigated the NPDB report and the report from the Hospital, acted in good faith, and afforded Plaintiff a fair hearing. The District cannot even begin to speculate what might be extreme and outrageous about those actions.

To establish a claim of extreme and outrageous conduct sufficient to support Plaintiff's claim, "the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Larijani v. Georgetown* Univ., 791 A.2d 41, 44 (D.C. 2002), *quoting Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) ("a case of intentional infliction of emotional distress is made out only if the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'"). Plaintiff's claim for IIED is wholly void of any facts that might help it withstand dismissal. A*li v. MedStar*, 3002 D.C. Super. LEXIS at 33 (summary judgment granted in favor of defendants where Plaintiff failed to

17

provide "any evidence that would shock the conscience or that goes beyond all possible bounds of decency").

Plaintiff fails to state what, if any, information he is relying on to support his contention that the District should have known that the reports from NPDB and the Hospital were invalid. But even if Plaintiff had made such an allegation, it would hardly satisfy the elements of IIED. Conceivably, the District could have been accused of outrageous conduct if it did ***not*** act on information about a physician surrendering privileges during an investigation of his competence and professional conduct.

## CONCLUSION

Because the District followed the statutes and regulations applicable to the summary suspension of a health practitioner's medical license and afforded him due process, Plaintiff cannot sustain any of his claims against the District of Columbia. For the reasons stated herein, the District respectfully requests this Honorable Court dismiss the District from this case entirely or, in the alternative, grant summary judgment in the District's favor.

Respectfully submitted,

PETER NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

____/s/ Ellen A. Efros_____
ELLEN A. EFROS [250746]
Chief, Equity I Section
Civil Litigation Division

_____/s/ Jayme B. Kantor_____
Jayme B. Kantor [488502]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
P(202) 724-6627
F(202) 727-3625

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AHMED ALI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Docket Number: 2008 CV 431** |
| | ) | **Judge Colleen Kollar-Kotelly** |
| **v.** | ) | |
| | ) | |
| **ENVISION HOSPITAL** | ) | |
| **CORPORATION, et. al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____) | | |

**ORDER**

Upon consideration of Defendant District of Columbia's Motion to Dismiss,

opposition thereto, and the record herein, it is, by this Court, on this _____ day

of _____ 2008, hereby

      **ORDERED**:  that Defendant's motion is **GRANTED**, and

      **FURTHER ORDERED**:    that the District of Columbia is **DISMISSED** as a

                defendant from this action with prejudice.


_____
Judge Colleen Kollar-Kotelly

Copies to:

Jayme Kantor
jayme.kantor@dc.gov, ellen.efros@dc.gov

Jennifer Hinkebein Culotta
jennifer@culottalaw.com

Charles William Hinnant , Jr
anelson@doctorlawyers.com

Deborah E. Sanders Kane
dkane@hartelkane.com

Steven Anthony Hamilton
steven.hamilton@hacdlaw.com

David Lee Rutland
dlr@wlekn.com

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AHMED ALI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Docket Number: 2008 CV 431** |
| | ) | **Judge Colleen Kollar-Kotelly** |
| **v.** | ) | |
| | ) | |
| **ENVISION HOSPITAL** | ) | |
| **CORPORATION, et. al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____) | | |


**ORDER**

Upon consideration of Defendant District of Columbia's Motion for Summary

Judgment, opposition thereto, and the record herein, it is, by this Court, on this

_____ day of _____ 2008, hereby

**ORDERED**:  that Defendant's motion is **GRANTED**, and

**FURTHER ORDERED**:    the District of Columbia is **DISMISSED** from this

action, with prejudice.


_____
Judge Colleen Kollar-Kotelly

Copies to:

Jayme Kantor
jayme.kantor@dc.gov, ellen.efros@dc.gov

Jennifer Hinkebein Culotta
jennifer@culottalaw.com

Charles William Hinnant , Jr
anelson@doctorlawyers.com

Deborah E. Sanders Kane
dkane@hartelkane.com

Steven Anthony Hamilton
steven.hamilton@hacdlaw.com

David Lee Rutland
dlr@wlekn.com

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| AHMED ALI, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| ENVISION HOSPITAL | ) |
| CORPORATION, et. al. | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

**Docket Number: 2008 CV 431
Judge Colleen Kollar-Kotelly**

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF
DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR
SUMMARY JUDGMENT**

The District of Columbia states in support of its Motion for Summary Judgment that the following facts are undisputed:

1. The National Practitioners Databank ("NPDB") reported that on August 11, 2005, an action was entered indicating that Dr. Ali surrendered clinical privileges. *Exhibit 1*.

2. In May 2005, Dr. Ali was the subject of an internal peer review at Greater Southeast Hospital (the "Hospital"). *Complaint*, ¶ 14-15 and *Exhibit 2*.

3. On May 27, 2005, the Hospital informed Plaintiff that the internal investigation required further attention and that his vascular privileges were suspended until an external review was completed. *Exhibit 3*.

4. On July 7, 2005, Plaintiff voluntarily surrendered his angioplasty privileges at the Hospital. *Exhibit 4*.

5.    At the time of Plaintiff's voluntary surrender of privileges, the external

investigation of circumstances surrounding the four patients who suffered

adverse effects under the care of Plaintiff was pending.  The Hospital

reviewed the external peer review report and, on August 18, 2005, informed

Plaintiff that it was accepting his voluntary surrender of his angioplasty

privileges and the rest of his privileges were reinstated.  The Hospital further

informed Plaintiff that the voluntary surrender of privileges was to be

reported.  *Exhibit 5*.

6.    When a health care facility accepts the surrender of clinical privileges of a

physician while a physician is under an investigation by the entity relating to

possible incompetence or improper professional conduct, the facility is

required to report this information.  42 U.S.C. § 11133(a)(1)(b).

7.    The District of Columbia Department of Health ("DOH") received the report

at the office of the Director of the Board of Medicine on August 24, 2005.

*See Declaration of James Granger* ("Granger Decl."), ¶ 3.

8.    The Board of Medicine ("the Board") initiated an investigation of the report of

Dr. Ali's surrender of privileges on August 25, 2005.  *Granger Decl.*, ¶ 4.

9.    During the Board's investigation, materials were requested and received from

the Hospital regarding the circumstances of the action reported to the NPDB.

*Granger Decl.,* ¶ 5.

10.   The Board's investigation, after receiving all of the materials about Plaintiff,

was completed in November 2005.  *Granger Decl.*, ¶ 4-5.

11.    None of the information received by the Board would lead to doubt as to the validity or integrity of the Hospital's internal and external reviews. *Granger Decl.*, ¶ 6.

12.    On November 30, 2005, the Board voted to issue a "Notice of Summary Suspension." It requested this notice be prepared by the Office of the Attorney General, who reviewed the investigation, prepared the notice, and returned it to the Board on January 26, 2006. *Granger Decl.*, ¶ 8.

13.    The Administrator of the Health Professional Licensing Administration signed the Notice of Summary Suspension on January 26, 2006, and the Executive Director of the Board of Medicine notified Plaintiff of this action. *Exhibit 6*.

14.    Plaintiff was served with the "Notice of Summary Suspension" on January 27, 2005. *Granger Decl.*, ¶ 8.

15.    Plaintiff requested a hearing on the Notice of Summary Suspension on January 30, 2006, and such was scheduled by the Office of Administrative Hearings to be heard on February 2, 2006. *Exhibit 7*.

16.    On February 1, 2006, Plaintiff moved for a continuance of the hearing, which was unopposed and granted. The Administrative Law Judge ("ALJ") rescheduled the hearing for February 9, 2006. *Exhibit 8*.

17.    The hearing took place over the course of three days – February 9, 10, and 23, 2006. The ALJ denied Plaintiff's initial motion to dismiss the matter because the Government had pled a prima facie case. *In Re Ali*, DH-B-06-800032, at 3 (complete order attached to Plaintiff's Complaint). However, upon

conclusion of the evidence, the ALJ vacated the summary suspension. *Id.* at 23.

18.  Plaintiff prevailed at his administrative hearing. *Id.*

19.  When the administrative hearing order was issued on February 28, 2006, the District lifted the suspension of Plaintiff's license that same day. There was a report to the NPDB of the summary suspension and a report that the suspension was vacated. *Granger Decl.*, ¶ 11.

20.  Plaintiff's license was temporarily suspended for approximately 33 days, including weekends and holidays.

                          Respectfully submitted,

                          PETER J. NICKLES
                          Interim Attorney General for the District of
                          Columbia

                          GEORGE C. VALENTINE
                          Deputy Attorney General
                          Civil Litigation Division


                          ____/s/ Ellen A. Efros_____
                          ELLEN A. EFROS [250746]
                          Chief, Equity I Section
                          Civil Litigation Division


                          ___/s/  Jayme B. Kantor_____
                          Jayme B. Kantor [488502]
                          Assistant Attorney General
                          441 4th Street, N.W.
                          6th Floor South
                          Washington, D.C. 20001
                          P(202) 724-6627
                          F(202) 727-3625

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

AHMED ALI,             )
                          )
       Plaintiff,     )      **Docket Number: 2008 CV 431**
                          )      **Judge Colleen Kollar-Kotelly**
       v.              )
                          )
ENVISION HOSPITAL     )
CORPORATION, et. al.    )
                          )
       Defendants.   )
                          )

## DECLARATION OF JAMES GRANGER

I, James Granger, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1.     I am the Executive Director for the District of Columbia Boards of Medicine and Chiropractic. In this position, I supervise the staff that supports the D.C. Board of Medicine and Board of Chiropractic. I began working for the District of Columbia in 1986 in the Occupational and Professional Licensing Administration in the Department of Consumer and Regulatory Affairs ("DCRA"). In 1994, I was assigned to be the Executive Director for the D.C. Boards of Medicine and Chiropractic. In 1996, the licensing and regulatory functions for the health Boards were transferred from DCRA to the Department of Health ("DOH"), where I was assigned as Executive Director for all health Boards. In 2000, I was detailed to another assignment in the DOH related to environmental regulation, but returned to professional regulation in 2001 as the Executive Director for the D.C. Boards of Medicine and Chiropractic.

2.      As part of my duties at DOH, I handle reports from the National Practitioners

Databank ("NPDB").  These reports vary in nature from (a) malpractice settlements or

judgments; (b) disciplinary actions in other jurisdictions; and (c) disciplinary action or

loss of privileges at healthcare facilities.

3.      The nature of my contact with the instant case involving Dr. Ahmed Ali began

with a report regarding the loss of privileges at a healthcare facility.  I received the NPDB

report from Greater Southeast Hospital (the "Hospital") on August 24, 2005, indicating

that Dr. Ali had surrendered his privileges during an investigation.

4.      Pursuant to standard procedure at DOH, I initiated an investigation based on this

report on August 25, 2005.  The investigator assigned to assist me in this matter at DOH

was Gregory Scurlock.  The scope of the investigation was to gather documents and

information that were behind Dr. Ali's surrendered privileges at the Hospital.  The

investigation was completed in November 2005.

5.      The investigation included the following information from the Hospital:

   a. A letter dated 7/7/05 from Dr. Ali to Edgar Potter, M.D. that requested removal of
      angioplasty procedures from his list of privileges at GSECH.
   b. A letter dated 11/6/02 from Karen Dale, RN, CEO of GSECH that appointed Dr.
      Ali to Provisional Staff status at GSECH with specified privileges.
   c. A letter dated 11/11/01 which was Dr. Ali's explanation of his malpractice history
      and his perspective on Washington Hospital Center's (WHC) decision not to
      renew his privileges.
   d. A letter dated 10/28/04 from Joan Phillips, CEO of GSECH that communicated to
      Dr. Ali that his medical staff privileges had been renewed for two years.
   e. A memorandum dated 5/18/05 from Wilton Nedd, M.D. to Gangagee Balkissoon,
      M.D. [Chair Department of Surgery at GSECH] that is a summary of the cases
      reviewed by Dr. Nedd.  The letter noted that "A review of the literature of
      postoperative complications following declotting of AV grafts found that
      intraoperative CVAs [essentially strokes during an operation] are extremely rare.
      Yet this surgeon had three patients who immediately postop developed CVAs on
      the same side as the declotting procedure.  Dr. Nedd suggested that "the surgeon
      [Dr. Ali] be written a letter to explain to the [peer review] committee how each of
      these incidents might have occurred....He [Dr. Nedd] would like this to be

addressed sooner rather than later, since other patients may be at risk for similar outcomes."

f.  A letter dated 5/23/05 from Dr. Potter [Chair, Medical Staff Peer Review Committee and President, Medical Staff GSECH] to Dr. Ali asking him to be present on 5/25/05 to answer specific questions about four patients on whom Dr. Ali operated who had adverse outcomes.

g.  A letter dated 5/26/05 from Dr. Potter to Dr. Ali that advised Dr. Ali that the cases would be submitted for external review.

h.  A letter dated 5/27/05 from Dr. Potter to Dr. Ali that summarily suspended Dr. Ali's vascular surgery privileges at GSECH.

i.  A letter dated 5/27/05 from Dr. Potter to Dr. Ali that advised that Dr. Ali's vascular surgery privileges would remain suspended until the external review was concluded.

j.  A letter dated 6/9/05 from Dr. Ali to Dr. Potter requesting a hearing to clarify the outcomes of the state cases.

k.  A letter dated 8/18/05 from Dr. Potter to Dr. Ali that advised that the external peer review was concluded [No results specified.] and accepting Dr. Ali's resignation of vascular surgery privileges [see letter "a" above].

l.  A letter dated 8/22/05 from Dr. Potter to Dr. Ali that advised of the hearing procedures and cost.

m.  Copies of the external peer review documents that found deviations from the standard of care ranging from minor to significant.

6.     I reviewed the materials gathered in the investigation.  None of the information gathered from the Hospital would lead me to doubt the validity or integrity of the Hospital's internal and external reviews.  It was also an important factor in my consideration that Dr. Ali surrendered his vascular surgery privileges – this automatically triggers a reporting requirement to the NPDB when a practitioner voluntarily surrenders his privileges during an investigation, which was what occurred here.

7.     The Board of Medicine reviewed Mr. Scurlock's investigation report at its monthly meeting on November 30, 2005.  At this meeting, the Board voted to request the preparation of a "Notice of Summary Suspension" and a "Notice of Intent to Take Disciplinary Action" for service on Dr. Ali.

8.    I forwarded this request of the Board to the Office of the Attorney General

("OAG") to prepare the notices on December 1, 2005.  OAG was provided with the

investigative report and, after reviewing the case, returned the prepared "Notice of

Summary Suspension" to my office on January 26, 2006. The notice was served on Dr.

Ali on January 27, 2005.

9.    On January 30, 2005, Dr. Ali requested a hearing regarding the summary

suspension of his license.

10.    My office received Dr. Ali's request and a hearing was set before the Office of

Administrative Hearings, the adjudicatory body who hears summary suspension cases, on

February 2, 2006.  The matter was continued at the request of Dr. Ali and a hearing was

held on February 9, 10, and 23, 2006.

11.    On February 28, 2006, the Administrative Law Judge vacated the summary

suspension and Dr. Ali's suspension was lifted that same day.  There was a report to the

NPDB of the summary suspension and a report that the suspension was vacated.  The

Board did not proceed with a "Notice of Intent to Take Disciplinary Action."


I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _June_ _24_____, 2008.

                                James Granger

# EXHIBIT 1

Verification for DCN: 5500000038749109

National Practitioner Data Bank
Healthcare Integrity and Protection Data Bank
P.O. Box 10832
Chantilly, VA 20153-0832

( 6 )

http://www.npdb-hipdb.com

# TEMPORARY RECORD OF SUBMISSION

# ADVERSE ACTION REPORT

## TITLE IV CLINICAL PRIVILEGES ACTION

### Report Number: 5500000038749109

The information you entered has been transmitted to the NPDB and/or the HIPDB for processing based on the action reported or querying authority of your entity as specified when registering with the Data Bank(s). You have not met your obligation under applicable law until this information is received, processed, and accepted by the Data Bank(s) and an official response is returned. Your official response may be retrieved (i.e., downloaded) from http://www.npdb-hipdb.com approximately 4 to 6 hours after submission (some transactions may take longer).

When the official response is retrieved, please destroy this Temporary Record of Submission and replace it with the official response. A copy of the official response may be used to report to other organizations (i.e., State boards) as necessary.

**Report Type:**                    INITIAL

## A. REPORTING ENTITY

**Entity Name:**                    GREATER SOUTHEAST COMMUNITY HOSPITAL
**Address:**                        1310 SOUTHERN AVE., SE, STE. 219
**City, State, ZIP:**               WASHINGTON, DC 20032
**Country:**

**Entity Internal Report Reference (e.g.,
claim number):**

**Authorized Submitter's Name:**        JANET LEWIS
**Authorized Submitter's Title:**       VICE PRESIDENT, PERFORMANCE IMPROVEMENT
**Authorized Submitter's Telephone:**   (202) 574-7181
**Certification Date:**                 08/22/2005

## B. SUBJECT IDENTIFICATION INFORMATION (INDIVIDUAL)

Verification for DCN: 5500000038749109

| | |
|---|---|
| **Subject Name:** | ALI, AHMED |
| **Other Name(s) Used:** | |
| **Gender:** | MALE |
| **Date of Birth:** | 02/23/1951 |
| **Organization Name:** | GREATER SOUTHEAST COMMUNITY HOSPITAL |
| **Work Address:**<br>**City, State, ZIP:**<br>**Country:** | 1328 SOUTHERN AVENUE, SE<br>SUITE 211<br>WASHINGTON, DC 20032 |
| **Home Address:**<br>**City, State, ZIP:**<br>**Country:** | 12307 PLEASANT PROSPECT ROAD<br>BOWIE, MD 20721 |
| **Deceased:**<br>**Date of Death:** | NO |
| **Social Security Numbers (SSN):** | 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 |
| **Drug Enforcement Administration (DEA) Numbers:** | BA7309075 |
| **Professional School(s) & Year(s) of Graduation:** | CAIRO UNIVERSITY (1975) |
| **Occupation/Field of Licensure (Code):** | PHYSICIAN (MD) (010) |
| **State License Number, State of Licensure:** | MD11799, DC |
| **Other, as Specified:** | |

## C. INFORMATION REPORTED

| | |
|---|---|
| **Type of Adverse Action:** | TITLE IV CLINICAL PRIVILEGES |
| **Adverse Action Classification Code:** | VOLUNTARY SURRENDER OF CLINICAL PRIVILEGE(S), WHILE UNDER, OR TO AVOID, INVESTIGATION RELATING TO PROFESSIONAL COMPETENCE OR CONDUCT (1635) |
| **Other, as Specified:** | |

Verification for DCN: 5500000038749109

103

| | |
|---|---|
| **Date Action Was Taken:** | 08/11/2005 |
| **Date Action Became Effective:** | 08/11/2005 |
| **Length of Action:** | PERMANENT |
| **Description of Act(s) or Omission(s) or Other Reasons for Action Taken:** | VOLUNTARY RESIGNATION OF ANGIOPLASTY PRIVILEGES DURING SUSPENSION OF VASCULAR PRIVILEGES AND INVESTIGATION OF FOUR (4) VASCULAR CASES WITH ADVERSE OUTCOMES. |
| **Basis for Action or Finding:** | SURRENDERED CLINICAL PRIVILEGES (AD) |
| **Other, as Specified:** | |

---

**END OF DOCUMENT**

# EXHIBIT 2



**GREATER SOUTHEAST COMMUNITY HOSPITAL**
1310 Southern Avenue, S.E.
Washington, D.C. 20032
(202) 574-6000

118

23 May 2005

Ahmed Ali, MD
1328 Southern Avenue, SE, Suite 211
Washington, DC 20032

Dear Dr. Ali:

Four patients for whom you performed AV graft declotting procedures were referred for Surgical Departmental Peer Review because of the following matters:

- MR# 919998 (Wayne Tucker): 47 y o male underwent a declotting of <u>Right</u> AV graft and suffered a right sided intraoperative CVA (2/3/05)

- MR# 913176 (James Hickman) 59 y o male underwent declotting of <u>Left</u> AV graft and suffered a left sided intraoperative CVA  (10/14/2004)

- MR# 364378 (Lillian Jones) 66 y o female underwent declotting of <u>Right</u> AV graft and suffered a right sided intraoperative CVA  (11/8/04)

- MR# 919416 (Robert Miller) male underwent declotting of <u>Left</u> AV graft and developed a hemomediastinum (3/16/05)

Dr. Balkissoon, Department of Surgery Chair, conducted a preliminary review and determined that the case merited further assessment by a vascular surgeon. The vascular surgeon's findings were such that these cases have been referred to the full Medical Staff Peer Review Committee for an in-depth evaluation.

There will be a Medical Staff Peer Review Committee meeting on 25 May 2005 at 3:00 PM in the Hospital Board Room. Members of the committee request that you arrive at this meeting at 3:15 PM to answer the following questions:

1. Each procedure took an inordinately long period of time, up to 2 ½ hours in one case. Why did this occur?

2. You used NAHCO3 as an additive to lidocaine for local infiltration as an anesthetic. This is not common in the Washington DC area and not in keeping with local practice.  Is there a particular benefit to diverging from standard practice to use this procedure?

3. <u>Most significantly</u> in the dictated procedural notes you do not mention that a CVA occurred. The operative notes do not address any complications or explain how a stroke may have occurred during surgery in any of these patients. The committee is highly interested in hearing how these **rare** post operative complications occurred and why you did not address them in your operative report.

I look forward to seeing you at this meeting.

Sincerely,

Edger Potter, MD
Chair, Medical Staff Peer Review Committee and President, Medical Staff
Greater Southeast Community Hospital

This is a confidential professional/peer review and quality improvement document of Greater Southeast Community Hospital. It is protected from disclosure pursuant to the provisions of District of Columbia and federal laws. Unauthorized disclosure or duplication is absolutely prohibited.

# EXHIBIT 3

**GREATER SOUTHEAST COMMUNITY HOSPITAL**
1310 Southern Avenue, S.E.
Washington, D.C. 20032
(202) 574-6000

May 27, 2005

119

Ahmed Ali, M.D.
1328 Southern Avenue SE, #211
Washington, D.C. 20032

Dear Dr. Ali,

In accordance with the Greater Southeast Community Hospital Medical Staff Bylaws Article III, Section 12, Subsection 2b, the Executive Committee has reviewed the grounds for the summary suspension of your Vascular Access Surgery privileges, which occurred on May 26, 2005. The Executive Committee has determined that the suspension of all of your vascular privileges, including Ligation and Stripping of Veins, Repair of Acute Arterial Injuries, and Vascular Access Surgery for Hemodialysis, shall remain in effect until an external review of the following cases has been completed and the results evaluated:

MR # 919998 (Wayne Tucker – 2/3/05)     MR # 364378 (Lillian Jones – 11/8/04)
MR # 913176 (James Hickman – 10/14/04)  MR # 919416 (James Miller – 3/16/05)

You are hereby notified that you may not perform the suspended vascular procedures listed above at Greater Southeast Community Hospital until further notice. Every effort will be made to expedite the review process, and you shall be notified of the results of this review, as well as of any further actions taken based upon the results of the review.

As a member of the medical staff, you are bound by the rules of, as well as entitled to the rights afforded you by, the Greater Southeast Community Hospital Medical Staff Bylaws. As stated in Article III, Section 12, Subsection 2b of the bylaws, you have two (2) weekdays from the date that you receive this notice in which to request a hearing before the Hearing Officer. If you would like a current copy of the bylaws or have any questions, you may contact me at (202) 574-6655. Thank you for your cooperation.

Sincerely,

Edger Potter, M.D.
Chair, Executive Committee
Greater Southeast Community Hospital

# EXHIBIT 4

**AHMED ALI, M.D., F.A.C.S.**
*General Surgery*
*Vascular Surgery*

*1328 Southern Ave., S.E., #211,*
*Washington, DC 20032*

104

July 7, 2005

Edgar Potter, M.D.
Medical Staff President
Greater Southeast Community Hospital

Dear Dr. Potter,

Due to the change of the scope of my practice, I would like to request removal of Angioplasty procedure from my list of privileges at Greater Southeast Hospital.

If you have any questions, please don't hesitate to contact me.

Sincerely,

Ahmed M. Ali, M.D., F.A.C.S

CC:  Joan Phillips
       Cyril Allen, M.D.
       Scott Burr, M.D.
       Gangagee Balkissoon, M.D.

# EXHIBIT 5



**GREATER SOUTHEAST COMMUNITY HOSPITAL**
1310 Southern Avenue, S.E.
Washington, D.C. 20032
(202) 574-6000

August 18, 2005

Ahmed Ali, M.D.
1328 Southern Avenue SE, #211
Washington, D.C. 20032

Dear Dr. Ali,

At the meeting of the Peer Review Committee on August 9, 2005, the results of the external medical peer review of MR # 919998 (Wayne Tucker – 2/3/05), MR # 913176 (James Hickman – 10/14/04), MR # 364378 (Lillian Jones – 11/8/04), and MR # 919416 (James Miller – 3/16/05), were reviewed and forwarded to the Medical Executive Committee. At the meeting of the Medical Executive Committee on August 11, 2005, based upon the results of the external medical peer review and the recommendation of the Peer Review Committee, your request to voluntarily resign your Angioplasty privileges was accepted and the rest of your clinical privileges were reinstated.

Greater Southeast Community Hospital is required by the National Practitioner Data Bank, the District of Columbia Board of Medicine, and the Greater Southeast Community Hospital Medical Staff Bylaws to report any voluntary surrender of clinical privileges while under, or to avoid, investigation. If you have any questions regarding this requirement, you may access the NPDB Guidebook at www.npdb-hipdb.com and/or refer to the Medical Staff Bylaws. You may access the report by submitting a self-query to the website listed above.

These actions are effective immediately and shall not be subject to further hearing or appellate review. If you have any questions, you may reach me at (202) 574-6655. Thank you for your cooperation with this process.

Sincerely,

Edger Petter, M.D.
Medical Staff President and Medical Executive Committee Chair
Greater Southeast Community Hospital

# EXHIBIT 6

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## Department of Health



**D.C. Board of Medicine**

January 26, 2006

Ahmed M. Ali, M.D.
1328 Southern Avenue, SE #211
Washington, D.C. 20032

### Re: D.C. Medical License

Dear Dr. Ali:

Enclosed is a *Notice of Summary Action to Suspend License.* The effect of this notice is to terminate your privilege to practice medicine in the District of Columbia. Your option for requesting a hearing is specified in the notice.

Sincerely,

James R. Granger, Jr.
Executive Director
D.C. Boards of Medicine and Chiropractic

Via personal service

cc: Lisa Robinson
    Michael A. Stern, Esq.
    Docket Clerk, OAH (for information/alert)

---

717 14th Street, N.W., Room 1007, Washington, D.C. 20005 Phone: (202) 724-8755 Fax: (202) 724-8677

## GOVERNMENT OF THE DISTRICT OF COLUMBIA
## DEPARTMENT OF HEALTH

IN THE MATTER OF:                    :
                                     :
AHMED M. ALI,  M.D.                  :
                                     :
           Respondent                :


## NOTICE OF SUMMARY ACTION TO SUSPEND LICENSE

**To:**    **Ahmed M. Ali, M.D.**
           **1328 Southern Avenue, SE**
           **Suite #211**
           **Washington, DC 20032**

In accordance with the provisions of the District of Columbia Administrative Procedure Act, D.C. Official Code § 2-509 (a) (2001); the District of Columbia Health Occupations Revision Act of l985, D.C. Official Code § 3-1205.15 (b) (2001); and Title 17, Section 4118.1 of the District of Columbia Municipal Regulations (hereinafter "DCMR"), notice is hereby given of the summary suspension of your license to practice medicine in the District of Columbia, License No. MD11799.

Your license is hereby suspended, effective immediately upon your receipt of this notice.

The charges and specifications upon which the decision to suspend your license was based are set forth below.

| | |
|---|---|
| **Charge I:** | **Your conduct presents an imminent danger to the health and safety of the residents of the District of Columbia for which your license is summarily suspended pursuant to D.C. Official Code § 3-1205.15 (a) (2001).    Specifically, you willfully made a misrepresentation in treatment in violation of D.C. Official Code § 3-1205.14 (a) (11) (2001).** |
| Specification A: | In a peer review meeting conducted July 14, 2005 regarding Mr. Wayne Tucker you claimed the patient underwent thrombectomy of a graft fistula, as well as an atherectomy of the brachial artery and angioplasty of the basilica vein. A review of the operative procedure revealed no atherectomy was performed. |
| Specification B: | You wrote a surgery note regarding James Hickman reporting that you preformed an atherectomy on October 15, 2004. A review of the operative procedure revealed that no atherectomy was performed. |

Specification C:

In a peer review conducted on July 14, 2005 regarding Ms. Lillian Jones you claimed the patient underwent an atherectomy. A review of the operative procedure revealed no atherectomy was performed.

**Charge II:**

**Your conduct presents an imminent danger to the health and safety of the residents of the District of Columbia for which your license is summarily suspended pursuant to D.C. Official Code § 3-1205.15 (a) (2001). Specifically, you willfully made or filed a false report or record in the practice of a health profession in violation of D.C. Official Code § 3-1205.14 (a) (8) (2001).**

Specification A:

Specification A in support of Charge I is incorporated herein and made a part hereof.

Specification B:

Specification B in support of Charge I is incorporated herein and made a part hereof.

Specification C:

Specification C in support of Charge I is incorporated herein and made a part hereof.

Specification D:

On February 3, 2005, you performed a declotting procedure of the Right Arterial Venous ("AV") graft of Wayne Tucker a 47 year old man. Mr. Tucker suffered a left side intraoperative cardio-vascular aneurism ("CVA"). There is no mention in your dictated procedural notes that a CVA occurred.

Specification E:

On October 14, 2004, you performed a declotting procedure of the Left AV graft of James Hickman a 59 year old man. Mr. Hickman suffered a left side intraoperative CVA. There is no mention in your dictated procedural notes that a CVA occurred.

Specification F:

On November 18, 2004, you performed a declotting procedure of the Right AV graft of Lillian Jones, a 66 year old woman. Ms. Jones suffered a right side intraoperative CVA. There is no mention in your dictated procedural notes that a CVA occurred.

**Charge III:**

**Your conduct presents an imminent danger to the health and safety of the residents of the District of Columbia for which your license is summarily suspended pursuant to D.C. Official Code § 3-1205.15 (a) (2001). Specifically, you failed to conform to standards of acceptable conduct and prevailing practice within a health profession in violation of D.C. Official Code § 3-1205.14**

2

(a) (26) (2001).

Specification A:    During the declotting procedures performed on Wayne Tucker, James Hickman, Lillian Jones and Robert Miller you used NAHCO3 as an additive to lidocaine for local infiltration, as an anesthetic. NAHCO3 is not appropriately used in this manner.

Specification B:    During the declotting procedure performed on Robert Miller an angiogram was performed which revealed an occlusion of the innominate vein. You proceeded to perform an angioplasty of the left subclavian vein. The prevailing practice would have been to stop the procedure immediately upon determining that the angiogram revealed a complete occlusion.

Specification C:    You are a general surgeon, and not a vascular surgeon. You performed declotting procedures on Wayne Tucker, James Hickman, Lillian Jones, and Robert Miller which required the expertise of a vascular surgeon.

**Charge IV:**    **Your conduct presents an imminent danger to the health and safety of the residents of the District of Columbia for which your license is summarily suspended pursuant to D.C. Official Code § 3-1205.15 (a) (2001). Specifically, you demonstrated a willful or careless disregard for the health, welfare, or safety of a patient, in violation of D.C. Official Code § 3-1205.14 (a) (28) (2001).**

Specification A:    Specifications A in support of Charge I is incorporated herein and made a part hereof.

Specification B:    Specifications B in support of Charge I is incorporated herein and made a part hereof.

Specification C:    Specifications C in support of Charge I is incorporated herein and made a part hereof.

Specification D:    Specifications D in support of Charge II is incorporated herein and made a part hereof.

Specification E:    Specifications E in support of Charge II is incorporated herein and made a part hereof.

Specification F:    Specifications F in support of Charge II is incorporated herein and made a part hereof.

3

Specification G:    Specifications A in support of Charge III is incorporated herein and made a part hereof.

Specification H:    Specifications B in support of Charge III is incorporated herein and made a part hereof.

Specification I:    Specifications C in support of Charge III is incorporated herein and made a part hereof.

If you wish to appeal this summary suspension of your license, you must file a written request for a hearing within seventy-two (72) hours after service of this notice on you. Should you request a hearing, a hearing will be held within seventy-two (72) hours of receipt of a timely request. The request for a hearing should be addressed to James Granger, Executive Director, Board of Medicine, 717 14th Street, N.W., Ste 1007, Washington, D.C. 20005. A copy of your request should also be mailed to Michael A. Stern, Senior Assistant Attorney General, Office of the Attorney General, Pubic Safety Division, Civil Enforcement Section, Suite 450 North, 441 4th Street, N.W., Washington, D.C. 20001.

You may appear personally at such hearing and you may be represented by legal counsel. You have the right to produce witnesses and evidence in your behalf and to cross-examine witnesses against you, to examine evidence produced and to have subpoenas issued in your behalf to require the production of witnesses and evidence.

If you, or any witnesses you intend to call, are deaf or because of a hearing impediment cannot readily understand or communicate the spoken English language, you or your witnesses may apply to the Board for the appointment of a qualified interpreter.

A request for a hearing will not stay this summary suspension.


1/26/06
DATE

FESCHA WOLDU, Ph.D.
Administrator
Health Professional Licensing Administration
District of Columbia Department of Health

4

EXHIBIT 7



**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
825 North Capitol Street, NE, Suite 4150
Washington, DC 20002-4210

| | |
|---|---|
| IN RE: | |
| AHMED ALI, M.D. | Case No.: DH-B-06-800032 |
| Respondent | |

**CASE MANAGEMENT ORDER**

On January 30, 2006, this administrative court received by facsimile Respondent's request for a hearing on the Notice of Summary Action to Suspend License (the "Notice") issued by the Administrator for the Health Professional Licensing Administration, Department of Health. The Notice was dated January 26, 2006.

Pursuant to D.C. Official Code § 3-1205.15, a hearing will be held within 72 hours after receipt of the request for a hearing.

Therefore, it is this _____ day of January 2006:

**ORDERED** that the parties and any counsel shall appear for a hearing at the Office of Administrative Hearings, 825 North Capitol Street, N.E., Room 5100, on February 2, 2006, at 11:00 a.m. The parties and their attorneys shall at that time be prepared to proceed with an evidentiary hearing on the merits and shall have available to them at that time all witnesses and evidence they intend to offer; it is further

**ORDERED** that the parties shall bring with them to the hearing three (3) copies of any document that the parties may seek to offer into evidence at the hearing. The Government

documents shall be consecutively numbered beginning with number 100. Respondent's documents shall be consecutively numbered beginning with number 200. The parties and/or their attorneys are encouraged to confer before the hearing regarding stipulations as to the genuiness and authenticity of documents, the admissibility of documents, and material facts; it is further

**ORDERED** that, unless already filed, the attorney representing a party shall promptly file and concurrently serve on the attorney for the other party a notice of appearance in accordance with OAH Rule 2838; it is further

**ORDERED** that all parties and their attorneys shall comply with all applicable OAH rules set forth in the Title 1 of the District of Columbia Municipal Regulations (DCMR), Chapter 28.

Jesse P. Goode
Administrative Law Judge

Case No. DH-13-06-800032

Certificate of Service:

**By Facsimile and U.S. Mail (Postage Paid):**

Alan Dumoff, Esq.
30 Windbrooke Circle
Gaithersburg, MD 20879
**FAX: (301) 987-0971**

I hereby certify that on ____1/31____,
2006, this document was caused to be served
upon the parties named on this page at the
addresses listed and by the means stated.

_____
Clerk / Deputy Clerk

**By Facsimile and Interoffice Mail:**

Michael Stern, Esq.
Office of the Corporation Counsel
Civil Division
441 4th Street, NW Suite 450-North
Washington, DC 20001-2714
**FAX (202) 727-6546**

Dr. Feseha Woldu
Administrator
Department of Health
Health Professional Licensing
Administration
717 14th Street, N.W., 6th Floor
Washington, DC 20005
**FAX: (202) 727-8471**

# EXHIBIT 8

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
825 North Capitol Street, NE, Suite 4150
Washington, DC 20002-4210

IN RE:

AHMED ALI, M.D.
          Respondent

Case No.: DH-B-06-800032

## ORDER

A telephone status conference was held with counsel for both parties on February 1, 2006, at approximately 9:00 a.m. and then again at approximately 4:45 p.m. During those conferences, it was determined that Respondent requires additional time to prepare his defense. An additional telephone status conference was held with counsel for both parties and two investigators from the Department of Health on February 2, 2006, at approximately 11:00 a.m. During this conference, Respondent Ali formally moved for a continuance. The Government consented to the motion for a continuance. The parties also came to agreement regarding pre-hearing disclosures.

Therefore, it is this 2nd day of February 2006:

**ORDERED** that the parties and any counsel shall appear for a hearing at the Office of Administrative Hearings, 825 North Capitol Street, N.E., Room 5100, on February 9, 2006, at 12:30 p.m. The parties and their attorneys shall at that time be prepared to proceed with an evidentiary hearing on the merits and shall have available to them at that time all witnesses and evidence they intend to offer. If additional time is required to complete the taking of evidence, the hearing will recommence on February 10, 2006 at 12:00 p.m.; it is further

**ORDERED** that no later than <u>February 7, 2006 at 5:00 p.m.</u>, the parties shall file with this administrative court and exchange: witness lists; the identity of expert witnesses and a proffer as to the opinions to be expressed, including the basis and reasons therefore; and all documents a party intends to introduce into evidence. The Government's documents shall be consecutively numbered beginning with number 100. Respondent's documents shall be consecutively numbered beginning with number 200. The attorneys are encouraged to exchange this information informally as early as possible. The attorneys are also encouraged to confer before the hearing regarding stipulations as to the authenticity of documents, the admissibility of documents, and material facts; it is further

**ORDERED** that, unless already filed, the attorney representing a party shall promptly file and concurrently serve on the attorney for the other party a notice of appearance in accordance with OAH.Rule 2838; it is further

**ORDERED** that all parties and their attorneys shall comply with all applicable OAH rules set forth in the Title 1 of the District of Columbia Municipal Regulations (DCMR), Chapter 28.

Jesse P. Goode
Administrative Law Judge

Certificate of Service:

**By Facsimile and U.S. Mail (Postage Paid):**

Alan Dumoff, Esq.
30 Windbrooke Circle
Gaithersburg, MD 20879
**FAX:  (301) 987-0971**


I hereby certify that on _____ 2/2 _____,
2006, this document was caused to be served
upon the parties named on this page at the
addresses listed and by the means stated.

_____

~~Clerk~~ / Deputy Clerk

**By Facsimile and Interoffice Mail:**

Michael Stern, Esq.
Office of the Corporation Counsel
Civil Division
441 4th Street, NW Suite 450-North
Washington, DC 20001-2714
**FAX (202) 727-6546**

Dr. Feseha Woldu
Administrator
Department of Health
Health Professional Licensing
Administration
717 14th Street, N.W., 6th Floor
Washington, DC 20005
**FAX:  (202) 727-8471**